STATE OF NORTH CAROLINA v. RICKY BLACK

No. 7420SC201

(Filed 5 June 1974)

**Robbery § 5— armed robbery — failure to submit common law robbery**
     The trial court in a prosecution for armed robbery or attempted armed robbery did not err in failing to submit the lesser included offense of common law robbery where the State's evidence tended to show that defendant and another entered a shop and examined a knife with the blade open, that defendant told the owner, "If you don't give us this knife, we're going to get you," and that the owner was then assaulted by both persons who pummeled her head, inflicted a laceration of the ear and fled the premises with the knife, and defendant's evidence tended to show that no robbery was committed

State v. Black

or attempted, that the person who accompanied defendant assaulted the shop owner and that defendant did not participate in that offense.

Judge BALEY dissenting.

APPEAL by defendant from *McConnell, Judge,* 22 October 1973 Session of Superior Court held in UNION County.

Defendant was tried upon a bill of indictment charging robbery with a dangerous weapon, a knife, whereby the life of Mrs. Lonnie S. Carr was endangered or threatened.

The State's evidence tends to show that on 13 September 1973 defendant and two other individuals entered Carr's Novelty Shop in Monroe, North Carolina. Mrs. Lonnie S. Carr, the prosecuting witness who operates the business, brought some knives to defendant who had requested to see them out of their respective shelves. The three individuals remained in the store a few minutes until Mrs. Carr coaxed them out in order that she might close the store and go to lunch. When Mrs. Carr reopened the store after lunch, defendant and one other youth came back and stated they wanted to buy the knife seen earlier in the day. Mrs. Carr then testified:

> "I turned right around and handed Black [defendant] the knife. I told him that it was the same price as it was, $2.58, counting the taxes. He took the knife and held it up like this. (Witness indicating). The blade of the knife was open. It was still open, I didn't close it back up after they went out. After raising the knife, Black said, 'If you don't give us this knife, we're going to get you.' That's the last thing I knew. I blacked out. . . .

> \* \* \*

> "It was a very short time till I regained consciousness. No one was present at that time but me. I was down on the floor on my knees, and they had been beating my head. I could hear, but couldn't see them. The boys that got the knife were beating my head. . . .

> "My ear was cut. I had to go to the hospital and have about three stitches taken in it. I had on a blue print dress when I got up, I looked at it and there was blood all over it."

When the two youths left, they took the knife with them. On cross-examination, Mrs. Carr testified:

"Ricky [defendant] was holding the knife after I gave it to him. He was holding it about like this. (Witness indicating). It was about eye level. Both of his palms were together. His thumbs and fingers were extended and the knife was between his palms. Ricky Black at no time pointed the knife at me. He said he would get me. He said, 'We'll get you if you don't give us this knife.' He knocked me out. He grabbed me from behind the showcase and I didn't know anything. I do not know who struck me. . . .

"The first time I was struck, I didn't see who struck me. I was standing directly in front of Ricky Black. They grabbed me. He was not to one side or the other. I did not see Ricky Black's arm move at all. He never said he would kill me. He only said, 'If you don't give us the knife, we're going to get you.' "

Michael Duncan appeared as a witness for the State and testified that he accompanied defendant to Carr's Novelty Shop on the day in question. Duncan stated that when Mrs. Carr handed the knife to defendant

"He [defendant] told her he wanted some money, and she was talking and so she didn't hear him. He then again said he wanted some money, and then she jumped back and started to run. She ran toward the back of her store. That was all. When she went backward, Ricky [defendant] just stood there and looked at her, and then went out the back door. The two of us were in there about three minutes at that time. . . . Ricky said he left the knife there. I don't know what he did with the knife."

The defendant's evidence tends to show that he and Michael Duncan went to Carr's Novelty Shop on 13 September 1973 to buy a knife. Mrs. Carr handed defendant a knife which he opened himself and held it to his face, looking at it. Defendant testified

"She started hollering and screaming and ran to the right side of the counter where Michael [Duncan] was. Michael started beating the lady and she fell. . . . Michael started beating the lady in the head and I just stood there. I just stood there and the knife that I had—I dropped it in the store on the floor. I ran over there and pushed Michael off the lady and he said, 'Are you going to get the money?' I said, 'No, let's get out of here.' So we ran."

The trial judge instructed the jury that it might return any one of three verdicts: (1) guilty of robbery with a dangerous weapon, (2) attempted robbery with a dangerous weapon, or (3) not guilty. The jury returned a verdict of guilty of attempted robbery with a dangerous weapon. Judgment of imprisonment was entered thereon.

*Attorney General Morgan, by Assistant Attorney General Davis, for the State.*

*William H. Helms for the defendant.*

BROCK, Chief Judge.

The prosecuting witness in this case is an eighty-one year old woman who, on the date in question, was conducting business alone in her establishment when defendant, a five feet-nine inch seventeen year old male, accompanied by a fifteen year old male, entered the shop and examined the knife with the blade opened. There is evidence to the effect that Mrs. Carr was then assailed by both males who pummeled her head, inflicted a laceration of the ear, and then fled the premises with the knife.

The State's evidence tends to show that defendant took, or attempted to take, Mrs. Carr's knife by the use or threatened use of the knife whereby the life of Mrs. Carr was endangered or threatened, and that the taking, or attempt to take, was with intent to permanently deprive Mrs. Carr of her knife and to convert the knife to defendant's own use. This evidence tends to show a violation of G.S. 14-87. Defendant does not argue to the contrary. He argues only that the trial court committed prejudicial error by failing to submit to the jury the lesser offense of common law robbery.

It is true that in a prosecution for robbery with a dangerous weapon, the accused may be acquitted of the crime charged and convicted of a lesser offense included in the offense charged, such as common law robbery, if there is evidence from which the commission of such lesser offense can be found. But the trial court is not required to submit to the jury the question of a lesser offense, included in that charged, where there is no evidence to support such a verdict. *State v. Owens,* 277 N.C. 697, 178 S.E. 2d 442. The mere contention that the jury might accept the State's evidence in part and might reject it in part

State v. Black

is not sufficient to require submission to the jury of a lesser offense. *State v. Bailey,* 278 N.C. 80, 178 S.E. 2d 809.

The State's evidence tended to show robbery or attempted robbery with the use or threatened use of the knife, a dangerous weapon.

The defendant's evidence tends to show that no robbery was committed or attempted. It tends to show commission of the offense of an assault on Mrs. Carr by one Michael Duncan, who had accompanied defendant. However, defendant's evidence tends to show defendant did not participate in the commission of that offense.

If the State's evidence is believed, defendant committed the offense of robbery with a dangerous weapon, or attempted robbery with a dangerous weapon. If defendant's evidence is believed, he committed no offense. There was no evidence to support a verdict of guilty of common law robbery. The mere contention that the jury might accept the State's evidence that defendant robbed, or attempted to rob, Mrs. Carr, but might reject the State's evidence that defendant used or threatened to use the knife does not require the submission of the offense of common law robbery to the jury. *State v. Bailey, supra.* Under the State's evidence, if a robbery were committed or attempted, it was committed or attempted with the use or threatened use of the knife. The jury was properly instructed that they must be satisfied beyond a reasonable doubt of the existence of each element of the crime, which included the use or threatened use of the knife, or it would be the jury's duty to acquit defendant.

The trial court was correct in refusing to submit to the jury the question of defendant's guilt of common law robbery.

No error.

Judge PARKER concurs.

Judge BALEY dissenting:

In my view there is evidence to support a verdict for the lesser offense of common law robbery.