STATE OF NORTH CAROLINA v. ROY BRADSHAW

No. 7515SC528

(Filed 19 November 1975)

1. **Rape § 18**— assault with intent to rape — refusal to submit misdemeanor assault

   In a prosecution for assault with intent to rape, the trial court did not err in refusing to submit to the jury the lesser offense of misdemeanor assault where all of the evidence, including defendant's statement to the police, tended to show that defendant committed the assault upon the victim with the intent to gratify his passion notwithstanding any resistance on her part, notwithstanding defendant may have changed his mind during the assault.

2. **Criminal Law § 128**— assault with intent to commit rape — defendant's intent on prior occasion — testimony by prosecutrix — motion for mistrial

   In this prosecution for assault with intent to commit rape committed in November 1974, the trial court did not err in the denial of defendant's motion for mistrial when the prosecutrix testified that defendant had come to her house in June 1974 with the intention of raping her where the court promptly instructed the jury not to consider the testimony and the prosecutrix subsequently gave testimony describing in detail her encounter with defendant in June 1974.

APPEAL by defendant from *Alvis, Judge*. Judgment entered 27 March 1975 in Superior Court, ORANGE County. Heard in the Court of Appeals 14 October 1975.

Defendant was charged in a bill of indictment, proper in form, with the felony of assault with intent to rape. Defendant was also charged in Orange County case number 74CR13006 with the felony of burglary upon allegations arising from the

---

---

same incident as the alleged assault with intent to rape. However, the jury was unable to reach a verdict upon the burglary indictment (74CR13006), and a mistrial was ordered in that case.

The State's evidence tended to show the following: Martina Upchurch, age 30, is a native of France who has been living in the United States for eight years. She and her husband, Michael Upchurch, "fixed up" an abandoned farmhouse on highway 70 near Efland in Orange County. She and her husband separated in October 1973, and she and her two children have continued to reside in the farmhouse. She is working for a Ph.D. degree at the University of North Carolina at Chapel Hill and is teaching French there. At approximately 9:30 p.m. on 8 November 1974, Martina Upchurch and her two children retired for the night. All three were sleeping in the living room, which was heated by a stove. The son, age 11, slept in a sleeping bag on the couch. The mother and daughter, age 7, each slept in a sleeping bag on the floor. At about 1:00 a.m., 9 November 1974, they were awakened by a knock at the back door. They did not answer the knock because of the hour. The back door was opened, and then the door to the living room was opened. A tall slender black man entered the living room and asked the son on the couch, "Which is which?" Then he said, "Who is in this sleeping bag?" The son said, "My mother." The man said, "All right, pull your blanket over your eyes and don't look or I'll kill you." The man leaned over Martina Upchurch and struck her with his fist, first on one temple and then the other. Next he said, "You are going to die tonight." Martina Upchurch asked, "What do you want?" The man replied in explicit vernacular that he wanted to have sexual intercourse. Roy Bradshaw had been to the Upchurch house before, and from his build and his voice she immediately ascertained that the man was the defendant, Roy Bradshaw. A fierce struggle ensued between Martina Upchurch and defendant. He dragged and held her continuously by her hair. During the struggle she bit him on his lower leg, and he bit her on the back. Defendant finally dragged her out into the front yard, bumping her head on the steps as she was dragged out. Martina Upchurch lost consciousness temporarily. When she regained consciousness, she was lying on her back in the front yard about twenty feet from the house, and defendant was lying on top of her. She managed to escape and run back into the house. Her children bolted the door and put furniture against it while she called the Mebane police and some neighbors.

As Mebane Police Chief Dan Tate proceeded to the Upchurch house in response to the telephone call, he encountered a black Ford pickup truck going in the opposite direction. Later that same morning he observed the same truck parked in defendant's yard. Defendant was arrested at his home at about 11:00 a.m. on 9 November 1974. The officers examined and photographed the teeth marks on the back of defendant's left calf muscle. On 11 November 1974 defendant made a voluntary statement to the officers, which he reduced to writing by his own hand. The statement reads as follows:

"I left Carlton Long's house about 11:30 and went to Martina Upchurch's house and knocked on the door. No one answered the door. The door was not locked so I went in. I got in and saw a little boy and he was lying on the couch, and he called his mother. She was in a sleeping bag. She raised up her head and said 'What do you want' and I said 'You know,' and then she said 'You are the same one that was down in the field,' and I said 'No,' and then she told her little boy to call the Daniels and then I grabbed her by the arm. She got away and I grabbed her again. She pushed me away and I fell on the floor and she started biting me on the leg, and as I was getting up, I bit her on the back, but she still had a hold of my leg and I was trying to get away and I grabbed her by my leg to the door and I left."

Defendant offered no evidence. The jury returned a verdict of guilty of assault with intent to rape, and judgment of imprisonment was entered.

*Attorney General Edmisten, by Associate Attorney Cynthia Jean Zeliff, for the State.*

*Chambers, Stein, Ferguson & Becton, by Adam Stein, for the defendant.*

BROCK, Chief Judge.

[1] Defendant argues that the trial court erred in refusing to submit to the jury the lesser offense of misdemeanor assault. "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The presence of such evidence is the determinative factor." *State v. Melton,* 15 N.C. App. 198, 189 S.E. 2d 757 (1972). "The mere contention

that the jury might accept the State's evidence in part and might reject it in part is not sufficient to require submission to the jury of a lesser offense." *State v. Black,* 21 N.C. App. 640, 205 S.E. 2d 154 (1974), *affirmed* 286 N.C. 191, 209 S.E. 2d 458.

In this case all of the evidence tends to establish that defendant committed the assault with the intent to gratify his passion upon Martina Upchurch, notwithstanding any resistance on her part. Even from the defendant's statement offered by the State, defendant went into the Upchurch house in the nighttime without being admitted by anyone; he went to the room where Martina Upchurch and the children were sleeping; when she asked him what he wanted, he said, "You know"; he grabbed her, and a struggle ensued wherein she bit him and he bit her. Even though he said he was trying to get away and that he did leave after the struggle in the house, his own statement clearly shows his intent at the time he went into the house and first assaulted Martina Upchurch. Intent is an attitude or condition of the mind and is usually susceptible of proof only by circumstantial evidence. The circumstances disclosed by defendant's own statement tend to refute the contention that his entry into the house and the assault were done other than with the intent to gratify his passion upon Martina Upchurch, notwithstanding any resistance on her part. If defendant's assertion that he tried and succeeded in escaping from the struggle is accepted, it merely shows that he changed his mind. The offense of assault with intent to rape does not require that the defendant retain the intent throughout the assault, but if he, at any time during the assault, has an intent to gratify his passion upon the woman, notwithstanding any resistance on her part, the defendant would be guilty of the offense. *State v. Gammons,* 260 N.C. 753, 133 S.E. 2d 649 (1963). In our view the evidence did not require submission of misdemeanor assault to the jury. This assignment of error is overruled.

[2] Defendant next argues that the trial court committed error when it denied defendant's motion for a mistrial after the prosecuting witness, Martina Upchurch, in testifying about an earlier encounter with defendant, stated that defendant had come to her house in June 1974 with the intention of raping

her. The following appears in the direct examination of Martina Upchurch:

> "Yes, I had seen Roy Bradshaw before that night— once. It was in June, and that's what I was alluding to in the night.
>
> "Q. Where did you see him at in June?
>
> "A. He came with the intention to rape me.
>
> OBJECTION AND MOTION TO STRIKE: SUSTAINED.
>
> THE COURT: Ladies and gentlemen of the jury, do not consider the testimony as to what his intention was for any purpose."

The jury was then sent to the jury room, and defense counsel moved for a mistrial because of the witness's unsolicited statement. Ruling upon the motion was postponed by the trial judge until the completion of the evidence, and was denied after the presentation of evidence was completed.

The witness continued her testimony before the jury as follows:

> "I saw Roy Bradshaw in June of 1974. A young man drove up to my house in his truck and he said that he was of the Bradshaw family and well acquainted with almost all of the members of the Bradshaw family—liked and respected—they have helped me on numerous occasions, but . . . The Bradshaw family lives very close to me, about a quarter of a mile. So this young man whom I had never seen before told me to go with him in the field near my pond—not MY pond, the pond of the property on which I live—and I declined and then he said, 'Well, I want to show you that there is some marijuana growing there,' and I wanted to go and get it off, so I went with him near the pond, and we walked all around the pond and there was no marijuana; and as we were coming to the edge of the woods, I told him, 'Well, there is no marijuana, I am going back home.' And I had my back towards him at that time because I was going to walk back home. I wasn't really afraid because he hadn't been threatening, but at that time he jumped on my back.
>
> "Q. He did what?
>
> "A. He jumped on my back.

He jumped on my back, and I was lying on the ground, and there was a very short, not very violent, fight, and I don't exactly remember how it happened, but I found myself sitting up with my legs folded towards me and he was sitting across from me, and we started talking. Yes, talking. Yes, sir; the man that I was talking to is the man seated over here—Roy Bradshaw. I talked to him perhaps half an hour; twenty minutes or half an hour.

"Q. Did you talk to him long enough that you'd be able to recognize his voice again?

"A. Definitely; that's why I thought it was the same man in the night when he broke into the house, in the night in November."

The statement of the witness which precipitated defendant's motion for a mistrial was promptly withdrawn from consideration by the jury.

"In appraising the effect of incompetent evidence once admitted and afterwards withdrawn, the Court will look to the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict. In some instances because of the serious character and gravity of the incompetent evidence and the obvious difficulty in erasing it from the mind, the court has held to the opinion that a subsequent withdrawal did not cure the error. But in other cases the trial courts have freely exercised the privilege, which is not only a matter of custom but almost a matter of necessity in the supervision of a lengthy trial. Ordinarily where the evidence is withdrawn no error is committed." *State v. Strickland*, 229 N.C. 201, 49 S.E. 2d 469 (1948).

In this case the witness's subsequent testimony, describing in detail her encounter with defendant in June 1974, served to substantially mollify, if not nullify, any adverse effect from her earlier statement which may not have been erased by the trial judge's instruction to the jury. In our opinion the motion for mistrial was properly overruled.

Defendant finally argues that his motion to nonsuit should have been allowed. We have reviewed the evidence, and in our opinion it required submission of the case to the jury. This assignment of error is overruled.

No error.

Judges HEDRICK and CLARK concur.