STATE OF NORTH CAROLINA v. RODNEY LEPERE LITTLE

No. 8018SC770

(Filed 3 March 1981)

**Rape § 18.4– assault with intent to rape – necessity for instructing on simple assault**

In this prosecution for assault with intent to commit rape, the trial court erred in failing to charge the jury on the lesser included offense of simple assault where the evidence tended to show that defendant entered the victim's apartment, which was located over a public museum on a college campus, in the midafternoon; though he had a knife, he only threatened to hurt the victim and did not state any specific sexual intentions other than to tell her to get back to her bed and ask whether she wanted to get paid for it; defendant did not physically injure the victim in any way; when the victim began to scream, he dropped the knife and ran away; and defendant had been in the victim's apartment only two minutes when he left, since the evidence would permit the jury to find that, at the time he committed the assault, he did not intend to gratify his passion on the person of the victim if he encountered any significant resistance.

APPEAL by defendant from *Wood, Judge.* Judgments entered 10 April 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 23 January 1981.

Defendant was convicted, and active sentences were imposed, for violations of G.S. 14-54, felonious breaking or entering, and G.S. 14-22, assault with intent to commit rape.

The State's evidence, in pertinent part, tended to show the following. Gail Cotter Murphy, assistant director of admissions at Greensboro College, lived in a two-story brick house located on the edge of campus. The Brock Museum was located downstairs, and Miss Murphy resided in an apartment upstairs. A sign in the front yard, as well as a sign on the front of the building itself, identified the location of the museum for the public. There were, however, no signs on the back of the build-

ing, and nothing indicated that part of the building was residential.

On 21 November 1979, Miss Murphy returned home for lunch, as was her custom, at 12:30 p.m. Apparently, it was a very warm and humid day for that time of the year, and she stated that her apartment was "suffocating" when she entered. To get some relief, she opened the kitchen and bedroom windows and the back door. She then proceeded to take a shower.

As Miss Murphy was standing in the bathroom, with only a towel wrapped around her, she saw defendant standing on the roof and looking in the closed window located in the plant room of her apartment. She went back to her bedroom to get a bathrobe which she could not find. About one minute later, defendant was standing inside the plant room about six to ten feet away from her. She immediately asked him, "What do you want?," and he replied, "I guess I am in the wrong place. I am looking for the bookstore." Miss Murphy told him in a very loud aggressive voice to "Get out of here. The library is across campus." Defendant shrugged his shoulders and left through the back door.

Before Miss Murphy could recover from the initial shock of what had transpired, defendant returned (through the plant room) and approached her with a butcher knife in his right hand. She recognized the knife as one of her own which usually hung in a holder on the kitchen wall. Defendant said, "I will hurt you," and then grabbed her chest and started pulling on the towel. He also told her "Shut up; don't make a sound; take those glasses off." He grabbed her glasses with his left hand and threw them down. Miss Murphy kept moving backwards to avoid the knife which defendant kept prodding towards her throat. The knife did not, however, ever actually touch her throat. She then tried to talk to him, but he only responded, "Get back to that bed. ... What do you want, to get paid for it? ... Do you want to get paid for it?" Other than these inferential statements, defendant made no specific reference to sexual intercourse or his intent to rape her.

All this time, defendant was pushing her, and she kept moving backwards. Finally, both of them fell back against a love seat. Defendant was leaning directly over her on part of her leg. Using his left hand, he picked up the towel far enough to

see her abdomen area. At this point, Miss Murphy became hysterical and started screaming very loudly directly into his face. Defendant jumped up, dropped the knife and ran away. The entire episode, from the time defendant returned to the apartment until he left, took place in approximately two minutes.

Defendant is seventeen years old. On direct examination, he testified as follows. On 21 November 1979, he was in the vicinity of College Place where he stopped to help a man rake some leaves in the backyard of Miss Murphy's building. He received $5.00 for this help. Earlier, when he had passed by the front of the building, he had noticed the museum sign on the front. After he finished the raking, he walked up the back steps of the building and entered an open door. He saw Miss Murphy and asked her, "Where is the Greensboro Historical Book Museum?" She told him it was on the other end of campus, and he left. He shortly returned to ask her which end of the campus the museum was on, but before he could make this inquiry, she began screaming, so he ran away. He further stated that he did not have a weapon of any kind, that he did not threaten any violence and that he did not touch Miss Murphy.

On cross-examination, defendant admitted that he had previously been convicted of two misdemeanor breaking or entering charges in 1978. He had been out of prison only seven days when the incident at Miss Murphy's occurred. Defendant, nevertheless, insisted that he thought he was going to a museum when he went up the back stairs and entered through the open door. He denied that he had been on the roof looking inside the apartment before he went in. He said he did not know it was someone's home until he saw Miss Murphy standing there with nothing on but a towel. He conceded that after she told him to leave, it was not "okay to go back in there and talk to her some more. But, yes, I did it."

Defendant made several statements to the police shortly after he was arrested. Though contradictory in some respects, these statements tended to show that defendant pushed the victim down, and that when she started screaming, he ran away. During interrogation by the officers, though, defendant never admitted that he had used a weapon.

The jury found defendant guilty of felonious breaking or entering and assault with intent to commit rape. With respect to the second charge, the court submitted only two possible verdicts to the jury: guilty of assault with intent to commit rape or not guilty.

*Attorney General Edmisten, by Assistant Attorney General Ralf F. Haskell, for the State.*

*S. Kent Smith, Assistant Public Defender, for defendant appellant.*

VAUGHN, Judge.

Defendant first contends that the court erred by failing to charge the jury on the lesser included offense of misdemeanor assault. We agree.

Defendant tendered a request, in apt time, for the jury to be instructed upon the offense of simple assault. Simple assault is clearly a lesser included offense of assault with intent to commit rape.[1] As a general proposition, the judge has a duty to declare and explain the law arising on all of the evidence. G.S. 15A-1232; *see State v. Leslie*, 42 N.C. App. 81, 255 S.E. 2d 635 (1979). This duty necessarily requires the judge to charge upon a lesser included offense, even absent a special request, when there is some evidence to support it. *See State v. Bell*, 284 N.C. 416, 200 S.E. 2d 601 (1973); *State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970). The guiding principle is best stated in *State v. Childress:*

> The general rule of practice is, that when it is permissible under the indictment, as here, to convict the defendant of "a less degree of the same crime," and there is evidence to support the milder verdict, the defendant is entitled to have the different views arising on the evidence presented to the jury under proper instructions, and an error in this respect is not cured by a verdict finding the defendant guilty of a higher degree of the same crime, for in such case,

---

1. Assault upon a female is also a lesser included offense of assault with intent to commit rape. *State v. Banks*, 295 N.C. 399, 245 S.E. 2d 743 (1978); *State v. Gammons*, 260 N.C. 753, 133 S.E. 2d 649 (1963). It would not, however, have been proper to submit this crime to the jury as a lesser included offense of assault with intent to commit rape in the case at bar since defendant was not eighteen years old. G.S. 14-33(b)(2).

it cannot be known whether the jury would have convicted of the lesser degree if the different views, arising on the evidence, had been correctly presented in the court's charge.

*State v. Childress*, 228 N.C. 208, 210, 45 S.E. 2d 42, 44 (1947).

The State, however, argues that all of the evidence in this case tended to establish an assault with intent to commit rape. At the outset, we note that the law is well settled that to convict a defendant of assault with intent to commit rape, the State need only prove an assault whereby defendant intended to gratify his passion on the person of the woman, at all events and notwithstanding any resistance on her part, but it is not required to show that the defendant retained this intent throughout the assault or that he made a forcible, physical attempt to have sexual intercourse with her. *See State v. Silhan*, 297 N.C. 660, 256 S.E. 2d 702 (1979); *State v. Pearce*, 296 N.C. 281, 250 S.E. 2d 640 (1979); *State v. Hudson*, 280 N.C. 74, 185 S.E. 2d 189 (1971), *cert. denied*, 414 U.S. 1160, 94 S. Ct. 920 (1974); *State v. Rice*, 18 N.C. App. 575, 197 S.E. 2d 245, *cert. denied*, 283 N.C. 757, 198 S.E. 2d 727 (1973). Viewed in the light most favorable to the State, the evidence was undoubtedly sufficient to convict defendant for the higher degree crime of assault upon Miss Murphy with intent to rape. That, of course, is not the issue here. The question is whether there was *any* evidence which tended to support a conviction for the lesser offense of misdemeanor assault so that the jury should have been permitted to consider it as a possible verdict. In this regard, the State relies primarily on the case of *State v. Bradshaw*, 27 N.C. App. 485, 219 S.E. 2d 561 (1975), *review denied*, 289 N.C. 299, 222 S.E. 2d 699 (1976).

In *Bradshaw, supra,* the Court specifically held that the evidence, in a prosecution for assault with intent to commit rape, did not require submission of misdemeanor assault to the jury. The facts of the case were as follows. Defendant, without permission, entered the home of Martina Upchurch at 1:00 a.m. He proceeded to the living room where she was sleeping with her two children and

asked the son on the couch, "which is which?" Then he said, "Who is in this sleeping bag?" The son said, "My mother." The man said, "All right, pull your blanket over your eyes and don't look or I'll kill you." The man leaned over Martina

Upchurch and struck her with his fist, first on one temple and then the other. Next, he said, "You are going to die tonight." Martina Upchurch asked, "What do you want?" The man replied in explicit vernacular that he wanted to have sexual intercourse. ... A fierce struggle ensued between Martina Upchurch and defendant. He dragged and held her continuously by her hair. During the struggle she bit him on his lower leg, and he bit her on the back. Defendant finally dragged her out into the front yard, bumping her head on the steps as she was dragged out. Martina Upchurch lost consciousness temporarily. When she regained consciousness, she was lying on her back in the front yard about twenty feet from the house, and defendant was lying on top of her. She managed to escape and run back into the house.

*State v. Bradshaw*, 27 N.C. App. at 486, 219 S.E. 2d at 561-62. It is thus clear that the defendant had, in fact, overcome the victim's resistance by means of a fierce struggle which left her momentarily unconscious. That act proved the necessary intent. His efforts were only frustrated by her sudden return to consciousness and quick escape. The State, therefore, presented overwhelming evidence in that case which compelled the conclusion that defendant, if he was guilty of anything at all, had assaulted the victim with intent to commit rape.

*State v. Allen*, 297 N.C. 429, 255 S.E. 2d 362 (1979), is a similar case where the Court held it was not error to fail to submit the lesser included offense of assault on a female. There, the defendant entered Miss Wells' trailer in the nighttime and grabbed her from behind. He said, "I'm going to f--- you right now." Miss Wells screamed, and he threatened to kill her. Nevertheless, she continued to scream and struggle with her assailant for five minutes. In the process, she received a "busted" lip and a knot on her neck. The defendant got her down on the floor and unsuccessfully tried to remove her clothing. At some point, however, he apparently became scared so he got up and ran away.

Both *Bradshaw* and *Allen, supra,* are distinguishable from the case at bar. In both cases, the defendants, after an

illegal entry into the home in the nighttime, made explicit statements to the victims concerning their intent to have sexual intercourse and threatened the women with death if they did not accede to these demands. Also, the defendants' illicit attempts were either abandoned or frustrated only after they had engaged in violent, physical struggles with their victims for at least five minutes or longer. In sum, there was no evidence whatsoever in either case that the defendants had begun these advances with the mere intent to try to gratify their lust, but desist if the women showed any resistance. In contrast, here defendant entered the apartment, which was located over a public museum on a college campus, in the midafternoon. Though he had a knife, he only threatened to hurt the woman and did not state any specific sexual intentions, other than to tell her to get back to the bed and ask whether she wanted to get paid for it. He did not physically injure her in any way. When she began to scream (after he lifted the towel), he dropped the knife and ran away. He had been in the apartment only two minutes when he left. Significantly, defendant immediately retreated from the apartment on both occasions the moment he encountered meaningful resistance, *i.e.*, as soon as Miss Murphy became verbally aggressive and loud. This evidence would permit the jury to find that, at the time defendant committed the assault, he did not intend to satisfy his lust, if he encountered any significant resistance, and thus reject the State's argument that he intended to carry out the act at all events and not withstanding any resistance he might encounter.

In *State v. Gammons*, 260 N.C. 753, 133 S.E. 2d 649 (1963), the defendant, a preacher, lured the prosecutrix into a bedroom in his home on a religious pretext (to pray). Defendant's wife was home; however, she was apparently accustomed to her husband praying with church members in private. While they were praying, defendant pushed the prosecutrix down on the bed and got on top of her. He told her that she could be healed by having sexual relations with him. She responded: "No, I don't believe in no such mess as that." Nevertheless, he persisted and put his hand up her dress and tried to pull her underclothes down. She began to cry, and when his body touched hers, she told him

State v. Little

she was going to scream if he didn't leave her alone. He thereupon desisted from further sexual advances, but told her, as he unlocked the door, that she would die if she told anyone about it. Upon these facts, the Court held that the evidence was insufficient to convict the defendant of assault with intent to commit rape and ordered a new trial upon a charge of assault on a female. 260 N.C. at 756, 133 S.E. 2d at 651.

Only when the evidence of intent to commit rape at the time of the assault is overwhelming or uncontradicted should that factual issue of intent, which separates the greater offense from the lesser, be taken from the jury. The factual issue must be susceptible to clear-cut resolution. *State v. Banks*, 295 N.C. 399, 416, 245 S.E. 2d 743, 754 (1978). In *Banks*, defendant burst into the lobby of a women's restroom where the prosecutrix was reading. He pushed her against a wall and started to kiss her. When she attempted to escape, defendant, at knife point, forced her to enter a stall, disrobe, sit on the commode and prop her feet against the walls of the stall. He then rubbed his genitalia against hers and thereafter forced her to perform oral sex. The court held the evidence to be sufficient to take the case to the jury on the charge of assault with intent to commit rape but ordered a new trial because the judge failed to submit the lesser included offense of assault on a female. We conclude that the evidence of assault with intent to commit rape is much more "overwhelming" and "susceptible to clear cut resolution" in *Banks* than in the case at bar, and that the jury should have been allowed to consider the lesser offense.

New trial.

Chief Judge MORRIS and Judge BECTON concur.