STATE OF NORTH CAROLINA v. CLINT EDWARDS FRANKS

No. 8426SC990

(Filed 21 May 1985)

**Kidnapping § 1.3— confinement for purpose of facilitating rape—instruction on false imprisonment not required**

The evidence in a second-degree kidnapping case tended to show that defendant confined, restrained or removed the victim with the intent to have sexual intercourse with her notwithstanding resistance on her part and thus did not require the trial court to submit the lesser-included offense of false imprisonment where defendant's evidence tended to show that he and the alleged victim looked around an abandoned house together and that nothing else happened, and where the State's evidence tended to show: defendant grabbed the victim and shoved her into the abandoned house; defendant tied the victim's hands behind her back with a coat hanger, bound her arms and shoulders, and tied her ankles with electrical wire; defendant pulled up the victim's T-shirt, felt her breasts and then pulled her shorts and underwear down to midthigh; defendant placed his finger in the entrance to the victim's vagina and asked if she were "ready"; defendant then placed the victim in a closet while he went to look for a blanket; defendant then took the victim out of the closet, stood her up for a minute, and said, "I ain't going to do it"; and defendant then pulled the victim's clothing back in place and untied or cut the coat hanger and wire from her wrists, ankles, arms and shoulders. The kidnapping offense was complete if defendant at any time during the confinement had the requisite intent, and it is immaterial that he changed his mind and did not complete the offense of rape.

APPEAL by defendant from *Beaty, Judge.* Judgment entered 23 January 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 3 April 1985.

Defendant appeals from a judgment of imprisonment entered upon his conviction of second degree kidnapping.

*Attorney General Edmisten, by Assistant Attorney General John R. Corne, for the State.*

*Assistant Appellate Defender Robin E. Hudson for defendant appellant.*

WHICHARD, Judge.

The issue is whether the court erred in refusing to instruct the jury on false imprisonment, a lesser included offense of kidnapping. We hold that the court did not err.

The necessity for instructing as to a lesser included offense arises only when there is evidence from which the jury could find that the crime of lesser degree was committed. *State v. Bradshaw,* 27 N.C. App. 485, 487, 219 S.E. 2d 561, 562, *disc. rev. denied,* 289 N.C. 299, 222 S.E. 2d 699 (1975). "The presence of such evidence is the determinative factor." *Id.,* quoting *State v. Melton,* 15 N.C. App. 198, 189 S.E. 2d 757 (1972). "The mere contention that the jury might accept the state's evidence in part and might reject it in part is not sufficient to require submission to the jury of a lesser offense." *Bradshaw,* 27 N.C. App. at 487-88, 219 S.E. 2d at 562, quoting *State v. Black,* 21 N.C. App. 640, 205 S.E. 2d 154, *affirmed,* 286 N.C. 191, 209 S.E. 2d 458 (1974).

G.S. 14-39, under which defendant was indicted, provides in pertinent part that:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint, or removal is for the purpose of:

. . . .

(2) Facilitating the commission of any felony . . . .

Here defendant was charged with unlawfully, wilfully, and feloniously kidnapping the prosecuting witness without her consent for the purpose of facilitating the commission of the felony rape. Rape is defined at G.S. 14-27.2(a)(2) and 14-27.3(a)(1) as engag-

ing in vaginal intercourse with another person by force and against the will of the other person. The statutory phrase "engaging in vaginal intercourse with another person" is expressed in our cases as gratifying one's passion on the person of a woman; "by force and against the will of the other person" is expressed as notwithstanding her resistance. *E.g. State v. Gammons*, 260 N.C. 753, 133 S.E. 2d 649 (1963); *State v. Burnette*, 242 N.C. 164, 87 S.E. 2d 191 (1955); *State v. Lang*, 58 N.C. App. 117, 293 S.E. 2d 255, *disc. rev. denied*, 306 N.C. 747, 295 S.E. 2d 761 (1982); *Bradshaw*, 27 N.C. App. 485, 219 S.E. 2d 561.

In the cases cited above, the presence or absence of intent to rape has been dealt with in two contexts: (1) as here, the context of confining, restraining or removing with intent to commit rape and (2) the context of assault with intent to commit rape. The difference between the greater offenses — kidnapping or assault with intent to commit rape — and the lesser included offenses — false imprisonment or assault on a female — lies in the presence of intent to commit rape.

If, in the context here, all the evidence tends to establish that the defendant confined, restrained, or removed the prosecuting witness with the intent to have sexual intercourse with her notwithstanding resistance on her part, *Bradshaw*, 27 N.C. App. at 488, 219 S.E. 2d at 563, failure to instruct on false imprisonment is not error; it is not error to fail to instruct on false imprisonment if there is no evidence tending to show that the victim was kidnapped for some purpose other than rape, or for no purpose. *See State v. Allen*, 297 N.C. 429, 435, 255 S.E. 2d 362, 365 (1979) (where all the evidence shows intent to rape, failure to instruct on lesser included offense of assault on a female not error); *State v. Roseman*, 279 N.C. 573, 580-81, 184 S.E. 2d 289, 294 (1971). We therefore must determine whether there was evidence from which the jury could have concluded that the defendant confined, restrained or removed the prosecuting witness with some intent other than to rape her. *Lang*, 58 N.C. App. at 119, 293 S.E. 2d at 257. "The offense of [kidnapping] with intent to rape does not require that defendant retain the intent throughout the [offense], but if he, at any time during the [kidnapping], has an intent to gratify his passion upon the woman, notwithstanding any resistance on her part, the defendant would be guilty of the of-

fense." *Bradshaw*, 27 N.C. App. at 488, 219 S.E. 2d at 563, citing
*Gammons*, 260 N.C. 753, 133 S.E. 2d 649.

The State's evidence tended to show the following:

The defendant was twenty-three years old at the time of the
crime. The prosecuting witness was a seventeen year old high
school student. Sometime after 4 p.m. on 3 March 1983 the prose-
cuting witness was riding her bicycle near her home. She got off
her bike to look in the open doorway of an old house that was, for
the most part, boarded up. She turned at the approach of a man,
later identified as the defendant, and said, "Hi." When she turned
back toward the house, he grabbed her and shoved her in the
doorway. He blocked the door and began kissing her. She backed
away saying, "Don't, don't do that." Holding her arms and
shoulders the defendant moved the prosecuting witness into the
kitchen where she was cut on the lower thigh by broken glass. He
tied her hands behind her back by twisting a coat hanger around
her wrists. He also bound her arms and shoulders. He cut a piece
of electrical wire with a knife, which he showed to the prose-
cuting witness, and tied her ankles with the wire.

Once the prosecuting witness was bound, the defendant
pulled up her T-shirt and bra and felt her breasts. He undid her
shorts and pulled her shorts and underwear down to midthigh. He
placed his finger in the entrance to her vagina and said, "Are you
ready?" At that point, the defendant carried the prosecuting
witness upstairs. He stood her up and starting kissing her again.
He then put her in a closet in a seated position, told her he was
going to get a blanket, and shut the closet door. The prosecuting
witness was still bound with her breasts and lower body exposed.
She was unable to free her hands or stand.

The prosecuting witness stated that at that point, while shut
in the closet, she began to cry. She did not, however, cry or
scream in front of the defendant because, she testified, "I had
heard somewhere about a would-be rapist trying to scare and hu-
miliate the victim, if the victim doesn't appear to be scared or
humiliated that would discourage the rapist; and also if I had
screamed, it might have scared or upset him so he would try to
quieten [sic] me down using force." The prosecuting witness fur-
ther testified that she "was trying to appear not frightened or
terribly scared."

The defendant returned after about ten minutes, during which time he hid under the house the bicycle the prosecuting witness had been riding. He opened the closet and said he didn't have a blanket but had brought his jacket. Then he took the prosecuting witness out of the closet, stood her up for a minute, and said, "I ain't going to do it." He stated, "What I did was wrong." He pulled her clothing back in place and untied or cut the coat hanger and wire from her wrists, ankles, arms and shoulders. He got her bike from under the house and she rode home. She reached home around 5 p.m.

The testimony of the prosecuting witness was corroborated by a police officer who stated that her wrists had red marks on them and her legs were scraped and cut. The officer also found freshly cut wire at the scene.

The defendant's evidence tended to show that the defendant encountered the prosecuting witness as he walked past the abandoned house, that she spoke to him, that they poked around the house together, made general conversation, and left separately at about 5 p.m.

On the basis of this evidence, and after a review of the relevant case law, we do not believe the jury could find that the crime of lesser degree was committed. To find this the jury would have to be able reasonably to conclude from the evidence that the defendant confined and restrained the prosecuting witness not with the intent to rape her, but for the purpose of touching and kissing her only.

Several cases are instructive. In *Bradshaw*, 27 N.C. App. 485, 219 S.E. 2d 561, the defendant entered the victim's bedroom in the night uninvited. When the victim awoke and asked the defendant what he wanted he answered, "You know." After a fierce struggle the defendant left. The Court found that all the evidence tended to establish that defendant committed the assault with the intent to gratify his passion notwithstanding resistance. "[H]is own statement," the Court stated, "clearly shows his intent at the time" he assaulted the victim. *Id.* at 488, 219 S.E. 2d at 563. The Court continued,

Intent is an attitude or condition of the mind and is usually susceptible of proof only by circumstantial evidence. The cir-

cumstances disclosed by defendant's own statement tend to refute the contention that his entry into the house and the assault were done other than with the intent to gratify his passion upon [the victim], notwithstanding any resistance on her part.

*Id.*

"[A] statement of intent [has been] deemed significant by our courts . . . ." *Lang,* 58 N.C. App. at 120, 293 S.E. 2d at 257. In *Lang,* which raised on appeal the same issue as here, the Court found that the jury could have concluded that the defendant confined, restrained and removed the victim merely for the purpose of fondling her. The jury could have so concluded, the Court stated, because it

may have viewed as significant the prosecuting witness' testimony that during the more than an hour she was in the defendant's presence the defendant gave her instructions to get in the car, "keep [her] head down on [her] knees and don't raise it," take her clothes off and put her clothes on, but never stated that he wanted to have sexual intercourse with her.

*Id.*

Here, by contrast, the defendant made two statements to the prosecuting witness indicating his intent: with his finger on her vagina, he said "Are you ready?" Then, after carrying her upstairs and failing to find a blanket, he said, "I ain't going to do it." Thus, as in *Bradshaw* where the Court found intent and unlike in *Lang* where the Court did not, defendant's own statements refute the contention that he confined and restrained the prosecuting witness for some purpose other than rape. The fact that the defendant did not complete the offense of rape merely shows that he changed his mind. *See Gammons,* 260 N.C. at 755-56, 133 S.E. 2d at 651; *Bradshaw,* 27 N.C. App. at 488, 219 S.E. 2d at 563.

Nor do we believe the jury could reasonably conclude from the evidence that the defendant did not intend to gratify his passion if he encountered resistance. Cases where the Court has found that the defendant was dissuaded by the victim's resistance are distinguishable from this one on their facts.

In *State v. Banks*, 295 N.C. 399, 245 S.E. 2d 743 (1978), the Court found evidence of the lesser included offense of assault on a female where the defendant only forced the victim to have oral sex, demanded and received two dollars from her, then left. In *State v. Little*, 51 N.C. App. 64, 275 S.E. 2d 249 (1981), although defendant had a knife, he only threatened to hurt the victim and "did not state any specific sexual intentions . . . ." *Id.* at 70, 275 S.E. 2d at 253. "Significantly," the Court stated, "defendant immediately retreated . . . the moment he encountered meaningful resistance, i.e., as soon as [the victim] became verbally aggressive and loud. This evidence would permit the jury to find that . . . he did not intend to satisfy his lust, if he encountered . . . resistance, and thus reject the State's argument that he intended to carry out the act at all events . . . ." *Id.* Similarly in *Gammons*, 260 N.C. 753, 133 S.E. 2d 649, the Court found that the defendant desisted from further sexual advances when the victim told him she was going to scream if he did not leave her alone.

Here, however, the defendant precluded resistance by tying the prosecuting witness' arms behind her back and tying her ankles together with electrical wire. By thus incapacitating the prosecuting witness the defendant insured that he could and would not be deterred by any resistance on her part. All the evidence thus tends to establish that defendant committed the assault with the intent to gratify his passion notwithstanding resistance. *Bradshaw*, 27 N.C. App. at 488, 219 S.E. 2d at 563. It is immaterial that he changed his mind; the kidnapping offense was complete if he at any time during the confinement had the requisite intent. *Gammons*, 260 N.C. at 755-56, 133 S.E. 2d at 651; *Bradshaw*, 27 N.C. App. at 488, 219 S.E. 2d at 563.

While other rape and intent to rape cases may be more egregious on their facts, the uncontradicted evidence here shows that the defendant confined and restrained the prosecuting witness with the intent to have sexual intercourse with her against her will. We thus hold that the evidence did not require submission of false imprisonment to the jury.

No error.

Judges JOHNSON and EAGLES concur.