STATE OF NORTH CAROLINA v. GUY TRACY PENDERGRASS

No. 9228SC752

(Filed 3 August 1993)

1. **Criminal Law § 333 (NCI4th)— motion to sever—denial proper**
The trial court did not err in denying defendant's motion to sever his trial from that of his codefendant since the State's evidence, provided through victim eyewitness testimony, was sufficient to establish the elements as to each crime with which defendant was charged; this testimony, independent of the codefendant's testimony, was plenary and overwhelming evidence of defendant's guilt; the codefendant's testimony merely corroborated the State's evidence; additionally, the code-

fendant was not present in the dressing room of the victims' bridal store and thus did not testify with regard to any of the crimes committed therein and of which defendant was nevertheless convicted; therefore, any conflict in defendants' respective positions at trial was not of such a nature that, considering all of the other evidence in the case, defendant was denied a fair trial or prejudiced. N.C.G.S. § 15A-927(c)(2).

**Am Jur 2d, Trial § 9.**

2. **Criminal Law § 76 (NCI4th) — pretrial publicity — no change of venue — no error**

The trial court did not abuse its discretion in denying defendant's motion for change of venue or special venire where results of a poll of former jurors taken by a university student failed to demonstrate that the actual jurors who sat in defendant's trial based their decision on any pretrial publicity; all of the selected jurors stated that they had heard of the case through the media; jurors nevertheless stated that they understood that defendant was presumed innocent and that they could be fair and impartial; and, accordingly, defendant failed to demonstrate that it was reasonably likely that the jurors based their decision upon pretrial information rather than the evidence presented at trial. N.C.G.S. § 15A-957.

**Am Jur 2d, Criminal Law § 378.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

3. **Kidnapping and Felonious Restraint § 20 (NCI4th) — second-degree kidnapping of infant — unlawful confinement for purpose of facilitating felony — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for second-degree kidnapping of an infant where it tended to show that the codefendant pointed a gun at one victim's head while defendant ordered another victim to place her infant in a crib; when the baby began to cry, the codefendant pointed the gun at the baby and her mother while defendant refused the mother's pleas to hold her baby; after defendant forced the mother to put her baby in the crib, he then forced her into a dressing room where she was bound, gagged, and sexually assaulted; and there was thus substantial evidence that the baby was unlawfully confined, restrained,

or removed for the purpose of facilitating the commission of the felony of sexual assault.

**Am Jur 2d, Abduction and Kidnapping § 32.**

4. **Kidnapping and Felonious Restraint § 20 (NCI4th) — first-degree kidnapping — intent to commit sexual assault — sufficiency of evidence**

The trial court did not err in failing to dismiss the charges of first-degree kidnapping of two women for the purpose of facilitating the commission of first-degree sexual offense, since the fact that defendant separated three female victims from other victims, removed one victim's child, bound and gagged the victims, brought his own tying material and scissors, and cut off their clothes constituted substantial evidence of defendant's intent to sexually assault the victims.

**Am Jur 2d, Abduction and Kidnapping § 32.**

Appeal by defendant from judgments entered 21 January 1992 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 7 June 1993.

Defendant was charged in proper bills of indictment with one count of first degree rape, three counts of forcible sexual offense, two counts of first degree kidnapping and one count of second degree kidnapping. He entered pleas of not guilty to each of the charges. The State's evidence at trial tended to show the following: On 5 September 1991, Janie Miller was working at her family's business, "Here Comes the Bride," in Asheville, North Carolina. That morning, defendant Guy Pendergrass and codefendant Rhoda Bruington ("Bruington") came into the shop looking at wedding dresses for their purported wedding. After some time, Bruington pulled out a pistol and pointed it at Janie Miller.

Defendant ordered Janie Miller to place a note on the door of the store saying, "Be Back in One Hour." Subsequently, Janie Miller's daughter, Julia Miller Silver, entered the store and was forced to lie on the floor of the dressing room where she and her mother were bound and gagged by defendant. Soon thereafter, Kathleen Bennett entered the shop to return a tuxedo but was also tied up and forced by defendant to lie on the floor of the dressing room along with Janie Miller and Julia Miller Silver. Thereafter, Winston Pulliam and Anatoli Hofle entered the shop

and were forced to lie on the floor in an area away from the dressing room where defendant tied them up, taped their mouths shut and took their wallets.

Subsequently, Jeanna Miller Waldroup, another daughter of Janie Miller, came into the shop with her five-month old baby whereupon Bruington pointed a gun at the baby's head. Upon defendant's order, Jeanna then put the baby into a crib located in the shop. Despite Jeanna's pleas to hold the baby because it suffered from a breathing disorder and because she was breast-feeding the child, defendant refused to allow her to hold the child. Defendant then forced Jeanna to the dressing room where Kathleen Bennett and Julia Miller Silver already lay bound and gagged and similarly forced Jeanna to lie on the floor where he bound and gagged her.

Meanwhile, acting on defendant's instructions, Bruington took Janie Miller at gunpoint from the dressing room to the office and forced her to write a check made payable to defendant in the amount of $400.00, the amount in the shop checking account. Thereafter, Janie Miller's husband, John, came into the shop whereupon defendant also tied him up on the floor and taped his mouth shut. Having written the check to defendant, defendant retied Janie Miller on the floor but did not return her to the dressing room with the other three bound women who lay side by side.

Using scissors, defendant cut the clothes off of the three women in the dressing room. Defendant fondled Jeanna Waldroup's breasts and put his finger in her vagina. Defendant also fondled the breasts of Kathleen Bennett and moved the lips of her vagina with his fingers. Bennett told defendant that she was menstruating. Defendant fondled Julia Miller Silver's breast, inserted his finger in her vagina and then had vaginal intercourse with her while holding scissors to her throat and telling her to shut her eyes. After withdrawing his penis from her vagina, he ejaculated on her stomach and throat. During intercourse with Julia Miller Silver, defendant also held scissors to the throat of Jeanna Waldroup and told her to keep her eyes shut.

Defendant and Bruington then fled the bridal shop leaving their victims tied up and lying on the floor including the three young women in the dressing room who were left lying naked.

At the joint trial of defendant and Bruington, Bruington testified to assisting in the robbery of the bridal shop but denied any knowledge of or participation in the sexual assaults of the women. Rather, Bruington testified that after their arrest, defendant told her that he did not rape any of the women but that he had "masturbated on the girl."

Defendant presented no evidence. The jury found defendant guilty of all charges. The trial court entered judgments sentencing him to imprisonment for three consecutive life terms plus 110 years. Defendant appealed.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Neil Dalton, for the State.*

*Assistant Public Defender William D. Auman for defendant-appellant.*

MARTIN, Judge.

Defendant contends that the trial court erred (1) in denying defendant's motion to sever defendant's trial from that of his codefendant Rhoda Bruington, (2) in denying defendant's motion for change of venue, (3) in failing to dismiss the charge of second degree kidnapping of the infant, and (4) in failing to dismiss the charges of first degree kidnapping of two of the victims. We find no prejudicial error in defendant's trial.

[1] In his first assignment of error, defendant contends that the trial court erred in refusing to sever defendant's trial from that of his codefendant, Rhoda Bruington. Specifically, defendant argues that he was denied a fair trial because Bruington's testimony created an adversarial relationship between Pendergrass and Bruington as their defenses were irreconcilable and antagonistic.

With respect to severance, G.S. § 15A-927(c)(2) provides in relevant part:

(2) The court on the motion of the prosecutor, or on a motion of the defendant . . . must deny a joinder for trial or grant a severance of defendants whenever:

. . .

a. If before trial, it is found necessary to protect a defendant's right to a speedy trial, or it is found necessary to promote

a fair determination of the guilt or innocence of one or more defendants.

Whether defendants should be tried jointly or separately is a decision within the sound discretion of the trial court. *State v. Boykin*, 307 N.C. 87, 296 S.E.2d 258 (1982). This exercise of discretion will not be disturbed on appeal unless defendant shows that the trial court abused its discretion in joining the defendants and that as a result of that joinder the defendant did not receive a fair trial. *State v. Lowery*, 318 N.C. 54, 347 S.E.2d 729 (1986).

The fact that defendants in a joint trial may offer antagonistic or conflicting defenses does not necessarily warrant severance. *Id.* " 'The test is whether the conflict in the defendant's respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial.' " *Id.*, at 59, 347 S.E.2d at 734. The focus of this test is not whether the defendants contradicted one another, but whether one defendant has been prejudiced, therefore denying him a fair trial. *State v. Rasor*, 319 N.C. 577, 356 S.E.2d 328 (1987). The defendant is not prejudiced if the State presents plenary evidence of defendant's guilt, independent of the codefendant's testimony, and defendant has the opportunity to cross examine the codefendant. *Id.*

Defendant argues that in this case only one of the codefendants (Rhoda Bruington) chose to take the stand, and in doing so she implicated him in the alleged crimes. Defendant asserts that Bruington's testimony directly implicated him in the kidnapping of the victims and indirectly implicated him in the rape and sex offense charges. Additionally, defendant complains that Bruington's defense strategy denied him a fair trial as Bruington's counsel portrayed defendant as the culprit in an effort to absolve Bruington. Specifically, Bruington testified that she did not have knowledge of the sexual assaults until she was arrested. On cross examination of the victims, Bruington's counsel asked about Bruington's role in the sexual assaults and kidnappings. The victims testified that Bruington was not involved in the sexual assaults and kidnappings. Bruington also testified that defendant planned the crime, obtained the flex-cuffs and gun used in the robbery and kidnappings, and that defendant gagged and tied the victims and removed them to another room.

While such testimony may be antagonistic to defendant's case, nevertheless, it does not necessarily warrant severance unless de-

fendant was denied a fair trial. *Lowery*, at 59, 347 S.E.2d at 734. A review of the record demonstrates that the State's evidence, provided through victim eyewitness testimony, was sufficient to establish the elements as to each crime with which defendant was charged. This testimony, independent of Bruington's testimony, was plenary and overwhelming evidence of defendant's guilt. Bruington's testimony merely corroborated the State's evidence. Additionally, Bruington was not present in the dressing room of the bridal store and thus did not testify with regard to any of the crimes committed therein and of which defendant was nevertheless convicted. Therefore, any conflict in defendants' respective positions at trial was not of such a nature that, *considering all of the other evidence* in the case, defendant was denied a fair trial or prejudiced. Accordingly, we find no error in the denial of defendant's motion to sever his trial from that of his codefendant Rhoda Bruington.

[2] Defendant contends in his second assignment of error that the trial court erred in denying defendant's motion for change of venue or, in the alternative, for a special *venire* due to pretrial publicity and the prominence of one of the victims. We disagree.

"Due process requires that the accused receive a trial by an impartial jury free from outside influences." *State v. Boykin*, 291 N.C. 264, 229 S.E.2d 914 (1976), *quoting Sheppard v. Maxwell*, 384 U.S. 333, 362, 16 L.Ed.2d 600, 620 (1966). To assure compliance with the due process requirements of *Sheppard*, G.S. § 15A-957 provides in pertinent part:

> If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:
>
> (1) Transfer the proceeding to another county in the prosecutorial district as defined in G.S. 7A-60 or to another county in an adjoining prosecutorial district as defined in G.S. 7A-60, or
>
> (2) Order a special venire under the terms of G.S. 15A-958.

A motion for a change of venue or special *venire* pursuant to G.S. § 15A-957 based on prominence of the victim and inflammatory publicity is addressed to the sound discretion of the trial court, *State v. Harrill*, 289 N.C. 186, 221 S.E.2d 325, *death sentence vacated*, 428 U.S. 904, 49 L.Ed.2d 1211 (1976), and will not be disturbed on appeal unless defendant shows that the trial court abused its

discretion in denying this motion. *State v. Soyars*, 332 N.C. 47, 418 S.E.2d 480 (1992). The burden of showing prejudice that prevents a fair trial is on defendant. *Id.*

In order to obtain a change of venue, a defendant must establish that it is reasonably likely that prospective jurors would base their decision upon pretrial information rather than evidence presented at trial and would be unable to remove any preconceived impressions they might have formed. *State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339 (1983). In most cases, the defendant must specifically identify prejudice among the jurors who actually served in his case in order to carry his burden. *State v. Hunt*, 325 N.C. 187, 381 S.E.2d 453 (1989). Even where evidence of pretrial publicity exists, factual news accounts regarding the commission of a crime and the pretrial proceedings do not of themselves warrant a change of venue. *State v. Madric*, 328 N.C. 223, 400 S.E.2d 31 (1991). Furthermore, if factual news articles are non-inflammatory and contain information that for the most part could be offered at defendant's trial, a motion for change of venue is properly denied. *State v. Watson*, 310 N.C. 384, 312 S.E.2d 448 (1984).

Defendant contends that pretrial publicity in this case warranted a change of venue or special *venire* as defendant would be unable to receive a fair trial in Buncombe County. However, the record does not contain specific evidence as to what was stated in the pretrial publicity other than the results of a telephone poll conducted by Jennifer King, a student at the University of North Carolina. Sixty-seven random people picked from a list of former jurors in Buncombe County participated in the poll from which it was concluded that ninety-seven percent had heard something about the case, seventy-seven percent could not or were not sure if they could give defendant a fair trial were they to sit on the jury, and sixty-six percent said that based on what they had heard they believed that people in Buncombe County thought defendant was guilty.

The results of this poll fail to demonstrate that the actual jurors who sat in defendant's trial based their decision on any pretrial publicity. Although opinion testimony of the community in which defendant will be tried as to whether defendant can receive a fair trial may be relevant, it is not determinative on the question. *Madric*, at 228, 400 S.E.2d at 35. "The best and most reliable evidence as to whether existing community prejudice will prevent a fair

trial can be drawn from prospective jurors' responses to questions during the jury selection process." *Id.*, at 228, 400 S.E.2d at 34. In the case at hand, all of the selected jurors stated that they had heard of the case through the media. Nevertheless, the jurors stated that they understood that defendant was presumed innocent and that they could be fair and impartial. Accordingly, defendant failed to demonstrate that it is reasonably likely that the jurors based their decision upon pretrial information rather than the evidence presented at trial and thus, the trial court did not abuse its discretion in denying defendant's motion for change of venue or special *venire*.

[3] In his third assignment of error, defendant contends that the trial court erred in failing to grant his motion to dismiss the charge of second-degree kidnapping of the infant due to insufficient evidence. We disagree.

In ruling on a motion to dismiss, the evidence is to be considered in the light most favorable to the State, and the State is entitled to every reasonable inference therefrom. *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). The trial court must determine whether there is substantial evidence of each essential element of the offense charged, and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). Furthermore, this evidence "must be existing and real, not just seeming or imaginary." *Earnhardt*, at 66, 296 S.E.2d at 652. The trial court's function is to determine whether the evidence permits a reasonable inference that defendant is guilty of the crime charged. *Id.* The trial court's concern is sufficiency of the evidence, not weight of the evidence. *Id.* Weighing the evidence is a function of the jury. *Id.*

G.S. § 14-39 provides in relevant part:

(a) Any person who shall unlawfully confine, restrain or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . .

(2) Facilitating the commission of any felony or facilitating the flight of any person from the commission of a felony.

Specifically, defendant argues that by simply asking the infant's mother to put her in the crib, he did not "confine, restrain, or remove" the infant within the meaning of the kidnapping statute. He also argues, alternatively, that the kidnapping was not for the purpose of "facilitating the commission of a felony" as stated in the indictment.

As to the unlawful confinement of a person under the age of sixteen years of age, the State must show that the person was unlawfully confined, restrained or removed from one place to another without the consent of a parent or legal guardian. *State v. Hunter*, 299 N.C. 29, 261 S.E.2d 189 (1980). "The term 'restrain' connotes restriction by force, threat or fraud with or without confinement." *State v. Moore*, 77 N.C. App. 553, 557, 335 S.E.2d 535, 538 (1985), *affirmed*, 317 N.C. 144, 343 S.E.2d 430 (1986). The restraint does not have to last for an appreciable amount of time and removal does not require movement for a substantial distance. *Id.* In the present case, the evidence showed that Rhoda Bruington pointed a gun at Janie Miller's head while defendant ordered Julia Miller Waldroup to place her infant in the crib. Also, when the baby began to cry, Bruington pointed the gun at the baby and at Mrs. Waldroup, while defendant refused Mrs. Waldroup's pleas to hold the child. Merely because Mrs. Waldroup placed the infant in the crib herself does not indicate "consent" in light of the evidence. Thus, we find substantial evidence that the Waldroup infant was unlawfully confined, restrained and removed within the meaning of G.S. § 14-39.

Defendant also contends, in the alternative, that the evidence failed to show that the kidnapping was for the purpose of facilitating the commission of a felony. Defendant was charged with kidnapping the Waldroup infant for the purpose of facilitating the first degree sexual offense of her mother. Specifically, defendant argues that because an infant cannot impede the commission of a felony, then the felony is not facilitated by kidnapping the child. However, with respect to facilitating the commission of a felony, the underlying felony does not have to be committed against the victim of the kidnapping. *Id.* at 558, 335 S.E.2d at 538. Rather, the kidnapping statute requires only that the kidnapping facilitate the commission of any felony. *Id.* In the instant case, defendant forced Mrs. Waldroup to put her baby in the crib and then forced her into the dressing

room where she was bound, gagged, and sexually assaulted. Thus, there is substantial evidence to support a reasonable inference that the removal of the child facilitated the felony as the sexual assault on its mother may have been impeded if she were holding the infant. Defendant's motion to dismiss the second degree kidnapping charge was properly denied.

[4]  In his final assignment of error, defendant contends that the trial court erred in failing to dismiss the charges of first degree kidnapping of Kathleen Bennett and Jeanna Waldroup for the purposes of facilitating the commission of first degree sexual offense due to the insufficiency of the evidence to support those charges. Rather, defendant argues that the kidnappings were committed for the purposes of facilitating armed robbery and that the sexual offenses were only an "afterthought." Therefore defendant argues that there is a fatal variance between the evidence and the indictments. We disagree.

Where the indictment alleges intent to commit a particular felony, the State must prove the particular intent of the felony alleged. *State v. Whitaker*, 316 N.C. 515, 342 S.E.2d 514 (1986); *State v. White*, 307 N.C. 42, 296 S.E.2d 267 (1982). Intent may be inferred from the surrounding circumstances and is determined by the jury. *Id.* A kidnapping is complete if defendant at any time during the confinement has the intent to commit the underlying felony. *State v. Franks*, 74 N.C. App. 661, 329 S.E.2d 717 (1985), *disc. review denied*, 314 N.C. 333, 333 S.E.2d 493 (1985); *State v. Whitaker*, 76 N.C. App. 52, 331 S.E.2d 752 (1985), *affirmed in part and reversed in part*, 316 N.C. 515, 342 S.E.2d 514 (1986).

The evidence in the case before us demonstrates that defendant forced the three females who were subsequently bound, gagged, and sexually assaulted into a dressing room separate from the other people in the bridal store. Defendant brought his own tying material and scissors to the bridal shop which he used to tie up the women who were sexually assaulted and to cut off their clothes. Janie Miller, who was not sexually assaulted, was initially placed in the dressing room but was later removed before the three remaining women were assaulted. The fact that defendant separated these three female victims, removed one victim's child, bound and gagged the victims, brought his own tying material and scissors, and cut off their clothes constitutes substantial evidence of defendant's intent to sexually assault the victims. Therefore, the trial

court properly denied defendant's motion to dismiss the charges of first degree kidnapping of Kathleen Bennett and Jeanna Waldroup.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge ARNOLD and Judge WYNN concur.