STATE OF NORTH CAROLINA v. PAUL LOWERY

No. 513PA84

(Filed 29 August 1986)

### 1. Criminal Law § 92.1— conspiracy to commit murder—joinder of offenses against two defendants proper

The trial court did not err in granting the State's motion for joinder of defendant with a murder victim's husband for trial and in refusing to grant defendant's motions for severance, since both defendant and the victim's husband were charged with conspiracy to murder the victim; all of the offenses arose out of the scheme or plan to effectuate her murder; and joinder was thus proper. Furthermore, defendant and the victim's husband did not have antagonistic defenses, and defendant's being tried with the victim's husband did not create a risk of conviction on the basis of guilt by association. N.C.G.S. § 15A-926 (b)(2); N.C.G.S. § 15A-927(c)(2)a and b.

### 2. Criminal Law § 89.8— plea agreement with witness—defendant's right to be informed not violated

Defendant's rights under N.C.G.S. § 15A-1054(c) and his constitutional due process rights were not violated by the district attorney's alleged failure to disclose a plea agreement with a witness who testified against defendant, since there was no formal agreement between the State and the witness; defendant's counsel was aware sufficiently in advance of trial that the witness was going to testify for the State under a hope of leniency to have brought out in cross-examination the circumstances under which the testimony was being offered; and evidence that the witness entered a guilty plea pursuant to a plea bargain after he testified did not show that the district attorney's statement with regard to no plea bargain was untrue but was consistent with statements of the witness and his attorney that they hoped they could plea bargain.

### 3. Constitutional Law § 45— failure of counsel to perfect appeal—no denial of effective assistance of counsel

Where defendant alleges that he was denied effective assistance of counsel, trial counsel's failure to perfect defendant's appeal is not a basis for granting a new trial.

### 4. Constitutional Law § 48— alleged failure of counsel to develop alibi defense—no denial of effective assistance of counsel

There was no merit to defendant's contention that he was denied effective assistance of counsel because counsel failed to develop an alibi defense, since counsel did call two alibi witnesses; failed to make pretrial preparation; failed to object to hearsay testimony, since the testimony in question was admissible; failed to request arrest of judgment on the conspiracy conviction, since the conspiracy conviction was not merged in the murder conviction; failed to conduct an adequate examination of witnesses, since the appellate court will not second-guess trial counsel's strategy; and failed to examine adequately the victim's children.

**5. Criminal Law § 93— new evidence on rebuttal—no error**

Defendant was not prejudiced where the trial court allowed the State to present new evidence on rebuttal, since defendant was not denied an opportunity to challenge or rebut the new evidence.

**6. Conspiracy § 6— testimony of co-conspirator—sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for first degree murder and conspiracy to commit murder, though the evidence consisted mainly of the testimony of a co-conspirator, since testimony of a co-conspirator is competent to establish a conspiracy and a co-conspirator's unsupported testimony is sufficient to sustain a verdict.

**7. Homicide § 20.1— photograph of victim—admissibility**

In a prosecution of defendant for first degree murder and conspiracy to commit murder, the trial court did not err in admitting into evidence a photograph of the victim which was properly authenticated by a pathologist whose testimony it illustrated, a key to the victim's home, and gloves purportedly given to a co-conspirator by the victim's husband.

**8. Constitutional Law § 28— codefendant's conspiracy and murder convictions merged—defendant's convictions not merged—no denial of equal protection**

Defendant was not denied equal protection when a co-defendant's motion for merger of the conspiracy conviction with the first degree murder conviction was granted but defendant's convictions were not merged, since the codefendant was not present at the actual murder and his liability was predicated solely on·his participation in the conspiracy, while defendant, on the other hand, not only conspired to murder the victim but also actually participated in killing her.

APPEAL by defendant from judgments entered by *Smith, J.,* at the 2 April 1979 Special Criminal Session of Superior Court, ROBESON County.

The defendant was convicted by a jury of first-degree murder and conspiracy to commit murder. Following a sentencing hearing, upon the jury's recommendation the defendant was sentenced to life imprisonment for the murder. He was sentenced to a concurrent ten-year term for the conspiracy. Although the defendant's trial counsel was appointed to represent the defendant on appeal, no appeal was perfected because of the mistaken opinion by counsel that at a subsequent trial the defendant would run the risk of a death sentence. (*See* N.C.G.S. § 15A-1335.) The defendant successfully prosecuted a habeas corpus petition to the United States District Court for the Eastern District of North Carolina which on 4 September 1984 filed a modified order directing the North Carolina Supreme Court "to either permit petitioner a belated appeal or retry him within 30 days or a writ of

habeas corpus will be issued directing his release." On 19 September 1984, this Court granted the Attorney General's petition for writ of certiorari pursuant to North Carolina Rules of Appellate Procedure, Rule 21(a)(1) and allowed the defendant to bypass the Court of Appeals on the conspiracy conviction. Heard in the Supreme Court on 10 March 1986.

*Lacy H. Thornburg, Attorney General, by Tiare B. Smiley, Assistant Attorney General, for the State.*

*Wayne Eads and David H. Rogers for defendant-appellant.*

BILLINGS, Justice.

Both the defendant and his co-defendant, James Small, testified at their joint trial. The State's evidence tended to show that James Small solicited numerous people to kill his estranged wife, Evelyn Small, and that Vincent Johnson and the defendant agreed to kill Mrs. Small and accomplished the murder following Small's instructions. State's witness Vincent Johnson testified that after several unsuccessful attempts, he and the defendant went to Mrs. Small's house on the evening of 14 November 1978 and entered the back door with a key supplied by Small. While the two children of Mr. and Mrs. Small were asleep and Johnson kept watch, the defendant first tried to smother Mrs. Small and then strangled her to death. At the trial, Mr. Small denied that he had asked or hired anyone to kill his wife. The defendant presented two alibi witnesses and denied having been asked to kill or having killed the victim. The State presented several witnesses in its case in chief and over 15 more in its rebuttal case to establish the conspiracy and subsequent murder.

Small was convicted of first-degree murder and conspiracy to commit murder. Judgment was arrested on the conspiracy conviction and he was sentenced to death on the murder conviction. However, in *State v. Small,* 301 N.C. 407, 272 S.E. 2d 128 (1980), this Court remanded the case to the Superior Court of Robeson County for the entry of a verdict of guilty of accessory before the fact to murder and imposition of a life sentence. The Court found no other errors in Small's trial.[1]

---

1. In response to this Court's decision, the legislature enacted N.C.G.S. § 14-5.2, effective 1 July 1981, abolishing the distinction in guilt and sentencing between an accessory before the fact and a principal.

The defendant contends that his conviction should be reversed because (1) the charges against the defendant and James Small were improperly joined for trial, (2) the State failed to disclose promises or inducements offered to the State's witnesses, (3) he was denied effective assistance of counsel, (4) the State was allowed to introduce non-rebuttal evidence on rebuttal, (5) the evidence was insufficient to support his conviction, and (6) the introduction into evidence of certain real and demonstrative evidence was prejudicial error. Additionally, the defendant contends that his conviction for conspiracy should have been merged with his murder conviction. We find no error in defendant's trial or sentence.

## I.

[1] Defendant's first assignment of error is that the trial judge erred in granting the State's motion for joinder of him with Small for trial and refusing to grant his motions for severance.

On 12 March 1979, the District Attorney moved pursuant to N.C.G.S. § 15A-926 for a joint trial of James Small and Paul Lowery. On 19 March 1979, Small's attorney filed an objection to joinder. On 2 April 1979, the day of trial, Small's attorney filed a motion to sever and Lowery's attorney filed a motion objecting to joinder, asking for separate trials on the grounds

> That a separate trial of the charges against the defendant is necessary to achieve a fair determination of the guilt or innocence of the defendant in that the defenses of the defendants in this case are antagonistic, that defendant Lowery will be deprived of corroborative evidence in an alibi defense, and that his defense will be less persuasive.

When the case was called for trial, Judge Smith conducted a hearing on these motions.

Mr. Donald Bullard, the defendant's attorney at trial, argued that the defendant and Small had antagonistic defenses. Mr. Bullard said that, in an effort to show that someone other than the defendant committed the murder, he wanted to call Small as a witness to question him about the eight solicitations to commit murder with which he had been charged. He contended that without evidence that others were solicited, the defendant's alibi defense would be less persuasive.

Judge Smith denied the motions for severance but said that "based on the statement that you made to me this morning, we might get down the road and I might decide at that point that they should be severed and—. . . . If that be the case, I wouldn't hesitate to declare a mistrial as to one Defendant, and proceed on the other."

During jury selection the District Attorney asked to have the record reflect that in spite of the allegations of antagonistic defenses and antagonism between Small and Lowery, the attorneys were coordinating their challenges to prospective jurors. The following exchange took place:

MR. E. BRITT: Object to the Solicitor making another statement which we consider to be for newspaper publicity.

MR. BULLARD: Your Honor, there has not—

THE COURT: Just a minute. If I understood you all, today, you said the defense was not antagonistic.

MR. BULLARD: That's right. Did not say that the individuals were antagonistic either.

THE COURT: I understood that.

On 13 April 1979, after presentation of the State's and Small's cases, the defendant's attorney moved for a mistrial on the basis that the jury

cannot separate the defendant Lowery from the defendant Small any longer because of these statements which tend to involve indictment of solicitation. I think the jury at this time is highly prejudiced. I feel that they would convict Paul Lowery if they also would convict Mr. Small on the basis of guilt by association, and part of this association is the fact that they are being tried together, Your Honor.

The judge noted that Small had so far denied the other solicitations and that the testimony was not prejudicial to Lowery.

Joinder of defendants for trial is statutorily authorized

a. When each of the defendants is charged with accountability for each defense; or

b. When, even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

1. Were part of a common scheme or plan; or

2. Were part of the same act or transaction; or

3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

N.C.G.S. § 15A-926(b)(2) (1983).

Both Small and the defendant were charged with conspiracy to murder Mrs. Small, and all of the offenses arose out of the scheme or plan to effectuate her murder; thus joinder was proper. *See State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied*, 433 U.S. 907, 53 L.Ed. 2d 1091 (1977); *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977).

Even though properly joinable for trial pursuant to N.C.G.S. § 15A-926, charges against two or more defendants should not be joined or should be severed if "it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants," N.C.G.S. § 15A-927(c)(2)a (1983), or "it is found necessary to achieve a fair determination of the guilt or innocence of [a] defendant," N.C.G.S. § 15A-927(c)(2)b (1983). The ruling of a trial judge joining defendants for trial as authorized by N.C.G.S. § 15A-926 or denying severance is discretionary and is reversible on appeal only upon a showing that joinder denied the appealing defendant a fair trial. *State v. Boykin*, 307 N.C. 87, 296 S.E. 2d 258 (1982); *State v. Lake*, 305 N.C. 143, 286 S.E. 2d 541 (1982); *State v. Porter*, 303 N.C. 680, 281 S.E. 2d 377 (1981). Even though the defendants in a joint trial may offer antagonistic or conflicting defenses, that fact alone does not necessarily warrant severance. "The test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial." *State v. Nelson*, 298 N.C. 573, 587, 260 S.E. 2d 629, 640 (1979), *cert. denied sub nom. Jolly v. North Carolina*, 446 U.S. 929, 64 L.Ed. 2d 282 (1980).

The defendant contended at trial[2] and contends on appeal that he and Small had antagonistic defenses and that a joint trial deprived him of a fair trial. We disagree.

Both Small and the defendant denied any complicity in or knowledge of the offenses. The defendant presented evidence of alibi which was discredited and rebutted by the State.

It is true that one strategy employed by the attorney for Small was to suggest that the defendant killed Mrs. Small in retaliation against Small for reporting to the police that the defendant had, a few days before the murder, stolen approximately $3,000 from Small. There are two reasons why we are convinced that joint trial with Small resulted in no unfair prejudice to this defendant by reason of Small's trial strategy. First, the jury obviously rejected Small's theory, for it convicted both defendants, thus finding that Small solicited Lowery to commit the murder and that the murder was not committed in retaliation against Small. Second, a portion of the argument made by Small was actually favorable to the defendant Lowery, for the theory was that because Small and the defendant were at odds with each other, the defendant was not a person whom Small would have solicited to kill his wife.

As we said in *State v. Nelson*, 298 N.C. at 588, 260 S.E. 2d at 641:

> We conclude that defendants here were not denied a fair trial by the joinder notwithstanding the conflicts in their testimony. This is not a case where the state simply stood by and relied on the testimony of the respective defendants to convict them. The state itself offered plenary evidence of both defendants' guilt. Neither defendant testified directly to the other's guilt. Both denied any participation in the crime. Each defendant was subject to cross-examination by the other. Had separate trials been granted, Jolly could have testified to the same matters tending to implicate Nelson at Nelson's separate trial. The conflict between each defendant's respective testimony was not of such magnitude when considered in the context of other evidence that the jury was likely to infer from that conflict alone that both were guilty.

2. For purposes of deciding the question presented, we will disregard defense counsel's concession during jury selection that the "defense" was not antagonistic.

Although he first objected to joinder because he thought joinder would prevent his calling Small as a witness to question him about solicitation of other people, the defendant now contends that he was prejudiced by evidence that Small had solicited a number of people to kill Mrs. Small. He argued that being tried with Small created a risk of conviction on the basis of guilt by association. If we were convinced that juries were unable to separately evaluate the guilt or innocence of defendants tried jointly because of a tendency to determine guilt by association at trial, we would never uphold joint trials of criminal defendants.

From our review of the transcript, it is abundantly clear that the trial court's decision was carefully reasoned and continually re-examined with respect to the question of prejudice to this defendant by evidence of Small's other solicitations. We are further convinced that the joinder of the defendant for trial with Small did not result in the admission of evidence harmful to the defendant which would not have been admissible in a severed trial and that he was not prejudiced by the joinder.

This assignment of error is overruled.

## II.

[2] In his second assignment of error, the defendant contends that the trial judge abused his discretion by denying the defendant's motion for disclosure by the State of all promises and inducements offered to its witnesses in return for their testimony at trial. The defendant refers primarily to an alleged deal that the State made with Vincent Johnson. Although he says that Carson Locklear, Marilyn Lowery and Hazel Lowery, among others, might also fall into the category of persons receiving favorable treatment from the State in exchange for their testimony, he does not pursue in his brief any argument regarding their testimony.

N.C.G.S. § 15A-1054(c) (1983) provides as follows:

(c) When a prosecutor enters into any arrangement authorized by this section [providing for charge reductions or sentence concessions in consideration . of truthful testimony], written notice fully disclosing the terms of the arrangement must be provided to defense counsel, or to the defendant if not represented by counsel, against whom such testimony is to be offered, a reasonable time prior to

any proceeding in which the person with whom the arrangement is made is expected to testify. Upon motion of the defendant or his counsel on grounds of surprise or for other good cause or when the interests or justice require, the court must grant a recess.

The obligation on the prosecutor to divulge the information required by N.C.G.S. § 15A-1054(c) does not depend upon a request by the defendant. Nevertheless, the defendant filed with the prosecutor on 15 December 1978 a request for voluntary discovery which contained the following:

(1) To divulge, in a written or recorded form, any statements made by a co-defendant which the State intends to offer in evidence at the trial of the Defendant, PAUL LOWERY, and to divulge, in written or recorded form, the substance of any oral statement made by a co-defendant which the State intends to offer in evidence at said trial. *That the District Attorney divulge* to the attorneys for the Defendant, PAUL LOWERY, *any and all agreements heretofore entered into between the State and any co-defendant or witnesses to be called in the trial of this case against the Defendant, PAUL LOWERY, with regard to plea bargaining or leniency or other favorable actions on behalf of said witnesses in return for said witnesses' agreement to testify against the Defendant, PAUL LOWERY,* in this case or which were subsequently offered to said witness or witnesses prior to said witnesses's [sic] testimony. [Emphasis added.]

Judge Robert L. Gavin held a hearing on various discovery motions in this case on 25 January 1979. At that time he ordered the District Attorney "to divulge to Defense Counsel, in written or recorded form, any statements made by a Co-Defendant of the Defendant James Lenard Small," but he denied the rest of the request in paragraph "1," saying "I think that there is always the possibility of plea bargain." Although the judge was apparently acting under a misapprehension that plea bargain agreements were not subject to disclosure, the District Attorney stated: "I will state for their benefit, as to the remainder of paragraph 'L' [sic] there have been no agreements between the State and any Co-defendant."

At this point in the hearing, one of Small's attorneys said that he had previously asked permission from Mr. Jacobson, counsel for Vincent Johnson, to speak with Mr. Johnson but was denied permission. To refute the prosecutor's statement that no agreement had been made with Mr. Johnson, counsel for Small related the following conversation with Mr. Jacobson:

> I replied, very quickly, "Then, what you are saying is that your client has gotten some sort of plea bargain arrangement whereby he will testify against my client and Paul Lowery for his life, and your client will not be prosecuted for his life," and Mr. Jacobson immediately said, "That's right."

The District Attorney repeated that there had been no agreements and said that "If Mr. Jacobson feels that he's got something, some sort of agreement, that's his business, but I certainly haven't agreed to it." The judge once again said, mistakenly, that "there is nothing in our statute that requires it" and refused to order disclosure of agreements between the State and witnesses.

The issue surfaced again at trial during the District Attorney's direct examination of Vincent Johnson:

Q. [BY JOE FREEMAN BRITT:] All right. Is this your lawyer sitting here, Mr. Robert Jacobson?

A. Yes, sir.

Q. Vincent, have you been promised one thing on earth —

MR. E. BRITT: Objection.

Q. —in exchange for your testimony here?

MR. E. BRITT: Object.

THE COURT: Overruled.

THE WITNESS: No, sir.

Later, outside the presence of the jury, counsel for Small examined Mr. Jacobson, Vincent Johnson's lawyer, regarding an agreement with the District Attorney as follows:

Q. I ask you, sir, if I did not say to you in an angry manner that "What you are saying is thatyou [sic] have an agreement that your client will testify against my client Small

and Paul Lowery, for their lives, and that your client won't be tried for his life"?

MR. J. BRITT: Object to what he told the man.

THE COURT: Overruled.

. . .

THE WITNESS: You may have.

. . .

Q. (BY MR. E. BRITT:) I ask you, sir, if you did not say to me, "Ah, well, that's right"? Did you use those words to me, Mr. Jacobson?

A. I don't remember that.

. . .

A. I don't remember exactly, but I don't believe I did.

Q. Mr. Jacobson, did you have an agreement, either tacit or verbal, with Joe Freeman Britt or anyone of his assistants in his office that if your client testified in this case on behalf of the State that your client would not later be tried for his life?

A. I have had no such agreement.

. . .

A. I have not received any understanding of that sort from Mr. Britt or anyone from his office.

. . .

THE WITNESS: I did not have the understanding or knowledge. I had the hope.

During the State's rebuttal, the District Attorney asked SBI Agent Wade Anders if Vincent Johnson had "ever been promised anything to your knowledge in this case, by yourself or anyone else?" Anders answered that he had not.

On appeal the defendant contends that his rights under N.C.G.S. § 15A-1054 and his due process rights under the fifth and fourteenth amendments to the United States Constitution

have been violated by the prosecution's failure to disclose an agreement with Vincent Johnson in exchange for his testimony against this defendant.

After oral argument in this Court, the defendant filed a motion to supplement the record on appeal to include documents that show Vincent Johnson's 22 May 1979 guilty plea to second-degree murder and conspiracy to commit murder in exchange for a maximum sentence of 20-25 years in prison for the murder with a concurrent 10-year sentence for the conspiracy and a recommendation not to be housed in the same place as Small or Lowery. The defendant also filed a motion for appropriate relief on the grounds that the documents in Johnson's file are newly-discovered evidence of an indirect promise of leniency to Johnson. We allow the motion to supplement the record on appeal and have examined the documents relating to Johnson's plea of guilty and sentence. We conclude, however, that the defendant's assignment of error must be overruled and his request for a new trial be denied because, although the record clearly reveals a plea bargain between the State and Johnson, there is no evidence that the agreement had been made at the time Johnson testified as a witness at the defendant's trial. All of the evidence produced by the defendant and Small shows that Johnson and his attorney were cooperating with the prosecution without the benefit of a formal agreement but with the hope, perhaps even an expectation based upon familiarity with the District Attorney's practices, that if Johnson testified in the case against the defendant and Small, the State would enter into a plea bargain afterwards.

We hold that the defendant's rights under N.C.G.S. § 15A-1054(c) were not violated, for not only was there no formal agreement between the State and Vincent Johnson, the defendant's counsel was aware sufficiently in advance of trial that the witness was going to testify for the State under a hope of leniency to have brought out in cross-examination the circumstances under which the testimony was being offered.

A defendant's right to due process of law is violated if the State knowingly makes use of perjured testimony in a prosecution against him, *Mooney v. Holohan*, 294 U.S. 103, 79 L.Ed. 791 (1935), or fails to disclose upon request information in the State's possession which would materially aid the defendant in his de-

fense, *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed. 2d 215 (1963). "[E]vidence of any understanding or agreement as to a future prosecution would be relevant to [a state's witness'] credibility and the jury [is] entitled to know of it." *Giglio v. United States,* 405 U.S. 150, 155, 31 L.Ed. 2d 104, 109 (1972).

The defendant's contention that his due process rights were violated is based upon his assumption that the testimony of Johnson and Johnson's counsel and the statement of the District Attorney that no agreement had been made were untrue. The only evidence which he has offered to cast doubt upon their statements is the fact that after Johnson testified he entered a guilty plea to second-degree murder pursuant to a plea bargain and received a sentence of 20-25 years in prison. However, that evidence is not inconsistent with the statements of Johnson and his attorney that they hoped the District Attorney would enter into a plea bargain if Johnson testified or with the District Attorney's statement that he had ceased to make deals "when I got burned with" one defendant who "backed up from the truthful testimony."

Unlike the case *sub judice,* in the cases relied upon by the defendant either the existence of an actual agreement was concealed from the defendant, *Campbell v. Reed,* 594 F. 2d 4 (4th Cir. 1979); *State v. Morgan,* 60 N.C. App. 614, 299 S.E. 2d 823 (1983), or evidence favorable to the accused had been suppressed by the prosecution, *Giles v. Maryland,* 386 U.S. 66, 17 L.Ed. 2d 737 (1967); *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed. 2d 215. As we have noted, the fact that the witness was going to testify for the State and had a hope that as a result he would receive lenient treatment by the District Attorney was known to the defendant in advance of trial and was not concealed from him. We find no due process violation.

Although an instruction to scrutinize the testimony of an accomplice would not be sufficient in itself to alleviate prejudice resulting from the failure to reveal an agreement had there been one, we note that the jury was properly instructed that Vincent Johnson was an accomplice and as such that his testimony should be examined "with greater care and caution."

This assignment of error is overruled.

## III.

In his third assignment of error, the defendant argues that he was denied a fair trial and due process because of ineffective assistance of counsel, citing *State v. Weaver*, 306 N.C. 629, 640-41, 295 S.E. 2d 375, 382 (1982). *Weaver* sets out the following standard for evaluating claims of ineffective assistance of counsel: "In applying the test to the case at bar we must decide whether counsel's performance was 'within the range of competence demanded of attorneys in criminal cases.' *McMann v. Richardson*, 397 U.S. at 771, 90 S.Ct. at 1449, 25 L.Ed. 2d at 773." *See*, however, *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed. 2d 674 (1984), and *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241 (1985), which adopted the test enunciated in *Strickland* for use in North Carolina.

The defendant says that there were roughly nine areas in which trial counsel was deficient: (1) failure to develop an alibi defense; (2) lack of pretrial preparation; (3) failure to object to hearsay testimony; (4) failure to request arrest of judgment on the conspiracy conviction; (5) ineffective direct examination of Lowery; (6) ineffective cross-examination of Small; (7) ineffective treatment of the Small children; (8) ineffective examination of other witnesses; (9) failure to appeal.

[3] To take the last point first, trial counsel's failure to perfect defendant's appeal did not affect counsel's effectiveness at trial and has now been compensated for by full review on this appeal. Such a failure of counsel is not a basis for granting a new trial. *State v. Mathis*, 293 N.C. 660, 239 S.E. 2d 245 (1977).

[4] As will be discussed later in this opinion, the defendant's conspiracy conviction was not merged in the murder conviction; therefore counsel's failure to request arrest of the conspiracy judgment was not defective representation.

Trial counsel properly did not object to the testimony identified in defendant's appellate brief as inadmissible hearsay because the statements were in fact admissible. All of the statements identified in the defendant's brief as objectionable either were statements made by the defendant to the testifying witnesses and admissible as statements of a party opponent, *State v. Willard*, 293 N.C. 394, 238 S.E. 2d 509 (1977); 2 *Brandis on North Carolina*

*Evidence* § 167 (1982), or statements made by co-conspirators Small or Johnson in furtherance of the conspiracy and admissible as acts and statements of a co-conspirator, *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975); 2 *Brandis on North Carolina Evidence* § 173 (1982).

Defendant contends that trial counsel failed to do any pre-trial preparation except to file a discovery motion. He specifically objects to the lack of a *Brady*[3] motion requesting disclosure of statements made by the victim's two children, Jamie and Amy Small, and the failure of his counsel to join in Small's motion for change of venue. At trial, Amy Small identified Vincent Johnson as the person who entered her mother's room on the night of the murder. We note, however, that the defendant's request for voluntary discovery did contain a *Brady* request, and there is nothing in the record to indicate that counsel was not in fact apprised of the children's statements. Since Small's motion for change of venue was denied by the trial court, we fail to see how defendant's counsel's failure to join the motion on behalf of the defendant makes his assistance ineffective. Further, nothing has been presented to this Court which suggests that the defendant was unable to receive a fair trial in Robeson County.

The defendant's complaint about counsel's examination of witnesses is in effect a request to this Court to second-guess his counsel's trial strategy. This we decline to do. As this Court said in *State v. Milano*, 297 N.C. 485, 495, 256 S.E. 2d 154, 160 (1979), quoting from *Sallie v. North Carolina*, 587 F. 2d 636, 640 (4th Cir. 1978), *cert. denied*, 441 U.S. 911, 60 L.Ed. 2d 383 (1979): "Trial counsel are necessarily given wide latitude in these matters. Ineffective assistance of counsel claims are 'not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness.' "

We ordinarily do not consider it to be the function of an appellate court to second-guess counsel's tactical decisions, such as whether in the case *sub judice* to conduct only a brief examination of the victim's son, Jamie Small, or whether to attempt to suggest to the jury that another witness was possibly the accomplice who assisted Johnson in the murder.

---

3. *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215.

Finally, we note that trial counsel did in fact attempt to develop the defendant's alibi defense by calling two witnesses. Both witnesses were substantially discredited by the State. Again, we do not substitute our judgment for that of trial counsel as to whether other alibi witnesses, if available, would have been helpful.

The trial of the defendant and Small lasted for several days, and the State presented a strong case against the defendant. Although both the defendant and Small were convicted and Small was sentenced to death, defense counsel was able to persuade the jury not to recommend the death penalty for the defendant.

We have reviewed the entire record and are convinced that counsel's representation was "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771, 25 L.Ed. 2d 763, 773 (1970), and that counsel made no errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland v. Washington*, 466 U.S. at 687, 80 L.Ed. 2d at 693.

This assignment of error is overruled.

IV.

[5] Defendant contends that the trial judge abused his discretion in permitting the State to introduce evidence in rebuttal, arguing that during rebuttal the State was permitted to retry its entire case and to prove new matters. Our review of the record indicates that the questions propounded to rebuttal witnesses were, for the most part, properly designed to rebut matters produced during presentation of the defendants' evidence. N.C.G.S. § 15A-1226.

On appeal, defendant specifically objects to the questioning on rebuttal of Hazel Lowery, his "common-law" wife.

Ms. Lowery had not previously testified. She testified that the defendant had asked her what she did with a key he had given to her and said that the key "caused him to get gassed." N.C.G.S. § 15A-1226(a) (1983) provides, in pertinent part, that "[t]he judge may permit a party to offer new evidence during rebuttal which could have been offered in the party's case in chief or during a previous rebuttal, but if new evidence is allowed, the

other party must be permitted further rebuttal." *See State v. Goldman*, 311 N.C. 338, 317 S.E. 2d 361 (1984). Defendant acknowledges that N.C.G.S. § 15A-1226(a) appears to permit the introduction of new evidence during rebuttal and does not contend that he was denied the right to present further rebuttal. He nevertheless argues that in practice the statute is a "patent affront" to his constitutionally guaranteed protection against double jeopardy and the right to due process of law.

Double jeopardy principles are not applicable to evidence introduced at the rebuttal phase of a trial. The protections against double jeopardy provide only that a person may not be unfairly subjected to multiple trials or multiple punishments for the same offense. *State v. Murray*, 310 N.C. 541, 313 S.E. 2d 523 (1984).

Nor do we agree that defendant's right to due process of law was violated. The order of presentation of evidence at trial and the limitations on the right to present new evidence on rebuttal are designed primarily to ensure the orderly presentation of evidence. It is the trial judge's duty to supervise and control the trial, including the manner and presentation of evidence, matters which are largely left to his discretion. *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983). In the absence of a procedure which prevents the defendant from having an opportunity to challenge or rebut new evidence offered by the State, we fail to see how allowing the State to present new evidence on rebuttal violates the defendant's right to due process. In the present case, we find that the trial judge did not abuse his discretion in permitting the State to question Ms. Lowery and other rebuttal witnesses.

This assignment of error is overruled.

V.

[6] Defendant next argues that the trial judge erred in failing to dismiss for insufficiency of the evidence the charges of first-degree murder and conspiracy to commit murder. In order for criminal charges properly to be submitted to the jury, the State must present substantial evidence of each essential element of the offenses charged and that the defendant was the perpetrator. *State v. Judge*, 308 N.C. 658, 303 S.E. 2d 817 (1983). Substantial evidence must be existing and real, but it does not have to exclude every reasonable hypothesis of innocence. *Id.* "The evidence is to

be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal . . . ." *State v. Powell,* 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980). Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. N.C.G.S. § 14-17. A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. *State v. LeDuc,* 306 N.C. 62, 291 S.E. 2d 607 (1982).

In the present case, defendant concedes, and we agree, that the State offered substantial evidence through the testimony of Vincent Johnson of each essential element of first-degree murder and conspiracy to commit murder. Defendant contends, however, that Johnson's testimony is neither believable nor uncontroverted because he was a co-conspirator and accomplice in the crimes charged and because his credibility has been challenged due to alleged nondisclosure of promises made to him in return for his testimony. Defendant points to inconsistencies in the evidence.

It is well-established that the testimony of a co-conspirator is competent to establish a conspiracy and that a co-conspirator's unsupported testimony is sufficient to sustain a verdict. *State v. Martin,* 309 N.C. 465, 308 S.E. 2d 277 (1983); *State v. Carey,* 285 N.C. 497, 206 S.E. 2d 213 (1974). In considering a motion to dismiss, the trial court is concerned only with the sufficiency of the evidence, not with the weight of the evidence. *State v. Gonzalez,* 311 N.C. 80, 316 S.E. 2d 229 (1984). The credibility issues raised by the defendant go to the weight of the evidence, not its sufficiency. We find that Johnson's testimony in this case provided substantial evidence of all the essential elements of the offenses charged, and a reasonable inference of defendant's guilt could be drawn from this evidence. Johnson testified that he, Small, and the defendant met and discussed the murder of Mrs. Small, reached an agreement to kill her, and discussed a number of methods to effectuate the murder. Johnson further testified that on 14 November 1978, he accompanied the defendant to the Small home where the defendant entered Mrs. Small's bedroom and strangled her.

This assignment of error lacks merit and is overruled.

VI.

[7] Defendant next contends that the trial judge abused his discretion by permitting the introduction into evidence of a photograph of the victim's face, a key, and a pair of brown gloves. The photograph was introduced during direct examination of the pathologist to illustrate testimony concerning the condition of the victim's eye. The pathologist had testified that during the autopsy he observed hemorrhages in the sclera (white portion) of one of the victim's eyes. Prior to introducing the black and white photograph of the face, the prosecutor established that the pathologist had held the eye open so that the photograph could be taken. Defendant objected, arguing, out of the presence of the jury, that the photograph was taken in an altered condition, i.e., with the eye propped open rather than closed, and that the photograph was highly inflammatory and prejudicial inasmuch as it displayed "a very horrible view of an eye of a deceased person in which, when the flashbulb of the camera went off, the eye itself seem[ed] to light up and come alive." On appeal defendant also argues that a proper foundation was not laid for the introduction of the photograph in that the doctor did not take the photograph and did not specifically identify it but stated only that he recognized it. We find no merit to these arguments.

The autopsy conducted on the victim included an examination of her eyes. A finding of hemorrhaging in the sclera was significant in determining that death was caused by strangulation. To conduct the examination, the pathologist necessarily lifted the victim's eyelids open. The photograph illustrated the pathologist's findings. A "posed" photograph is admissible when properly authenticated by the witness as being an accurate representation of conditions as he saw them. See 1 Brandis on North Carolina Evidence, § 34 (1982); State v. Woods, 286 N.C. 612, 213 S.E. 2d 214 (1975), death sentence vacated, 428 U.S. 903, 49 L.Ed. 2d 1208 (1976). It has long been the law in this State that a photograph, despite its unpleasant depiction, is competent evidence when properly authenticated as representing a correct portrayal of conditions observed by the witness and used to illustrate the witness's testimony. State v. Williams, 308 N.C. 47, 301 S.E. 2d 335, cert. denied, 464 U.S. 865, 78 L.Ed. 2d 177 (1983); State v. Gibbons, 303 N.C. 484, 279 S.E. 2d 574 (1981).

The photograph need not have been taken by the witness, provided he can testify as to its accuracy as a representation. *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214. The record in the present case discloses that the pathologist sufficiently authenticated the photograph and stated that it could illustrate his testimony concerning the hemorrhaging found in the sclera of the victim's eye. We have viewed the photograph and, while it is indeed unpleasant, we do not agree that the trial judge abused his discretion by allowing its admission into evidence.

Defendant also objects to the introduction of a key to the victim's home, saying:

> The State also sought to introduce as evidence a key, purportedly the same key given by defendant James Small to Paul Lowery for the purpose of unlocking Evelyn Small's rear door to her house in order to gain entry on the night of her killing. That key was marked for identification purposes as State's Exhibit 22. (T p. 2481) The key was introduced over the objection of the defense. (T p. 2481, 11. 6-9.)

Actually, State's Exhibit 22 was a key recovered from Felton Brewer, who apparently had told SBI agents that Small had offered him money to kill Mrs. Small and had given him the key. The State's theory at trial was that Small had hired the defendant to murder Mrs. Small. The theory was made more credible by proof that Small had contacted others to accomplish the act prior to contacting the defendant. The key was therefore relevant as evidence and defendant has shown no unfair prejudice by its introduction. A key purportedly given to the defendant was not introduced into evidence because it was never found after he, according to Hazel Lowery, threw it away in the backyard.

The gloves which defendant argues were improperly introduced were those purportedly given to Vincent Johnson by Small. Johnson attempted to identify the gloves at trial but was interrupted by objections interposed by both defendants' counsel. Defendant contends that the gloves should not have been introduced into evidence because they were never identified. Defendant argues that he was prejudiced by the introduction of the exhibit because it was "later argued to the jury as being part of an elaborate preplanning of this killing." A second pair of brown gloves which were identified as those given by Small to defendant

Lowery were introduced without objection, thereby effectively eliminating any prejudice to the defendant by introduction of the gloves recovered from Johnson. This assignment of error is meritless.

## VII.

[8] Finally, defendant, a Lumbee Indian, claims that the trial judge erred and denied him equal protection when he granted codefendant Small's motion for merger of the conspiracy conviction with the first-degree murder conviction and refused to merge the defendant's convictions.

Inasmuch as no motion was made by the defendant for merger, we assume that it is his contention that the trial judge should have granted merger *ex mero motu* when he granted Small's motion to merge his conspiracy conviction into the murder conviction. The failure of the trial judge to merge defendant's convictions neither violated the defendant's equal protection rights nor constituted error.

The evidence at trial established that Small was not present at the actual murder; his liability for the murder was predicated solely on his participation in the conspiracy. As Justice Exum, speaking for the Court, explained in *State v. Small*, 301 N.C. at 428 n. 14, 272 S.E. 2d at 141 n. 14:

> We have consistently held that the crime of conspiracy is a separate offense from the accomplishment or attempt to accomplish the intended result. Thus, the offense of conspiracy does not merge into the substantive offense which results from the conspiracy's furtherance. A defendant may be properly sentenced for both offenses. *See, e.g., State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964); *State v. Brewer*, 258 N.C. 533, 129 S.E. 2d 262 (1963). It would be otherwise, however, were a defendant convicted of the substantive offense solely on the basis of his participation in the conspiracy. In such a case, proof of guilt of the substantive offense would necessarily include (indeed, would be equivalent to) proof of involvement in the conspiracy, and the defendant could not be properly punished both for conspiracy and the separate offense. *See, e.g., State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666 (1972), discussing the rationale of merger of the underly-

ing felony into the homicide charge in cases of felony murder. *See also State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979), and *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976), pointing out that the merger requirement may depend upon the theory of the case submitted by the judge to the jury. It should be noted that in the instant case, Judge Smith instructed the jury to find defendant guilty of murder upon proof that defendant had conspired to commit the murder. Given this theory of the case (a theory we reject today), the offense of conspiracy merged into the offense of murder. Accordingly, Judge Smith arrested judgment on the conspiracy conviction.

According to the evidence, the defendant, on the other hand, not only conspired to murder Mrs. Small, he also actually participated in killing her. The reason for the different treatment of his conspiracy conviction from that given to Small's conspiracy conviction was the difference in the evidence and theory forming the basis for the murder convictions, not the different races of the two individuals involved.

This assignment of error is overruled.

Defendant received a fair trial free of prejudicial error.

No error.