ELMORE, Judge.
 

 *703
 
 Defendant Bertie Delvon Latez McQueen appeals from judgment entered upon jury verdicts finding him guilty of second degree murder
 
 *704
 
 and armed robbery. On appeal, defendant argues his trial counsel was ineffective by failing to ensure the jury knew that the State's key witness could have been charged with first degree murder in the case, but was not. Defendant further contends he was denied a fair trial when the prosecutor failed to correct incorrect testimony, actively elicited incorrect testimony, and recited the law incorrectly in her closing argument.
 

 For the reasons stated herein, we conclude that defendant received effective assistance of counsel as well as a fair trial, free from error.
 

 I. Background
 

 On 18 November 2013, a grand jury indicted defendant for the 2 July 2013 shooting death and robbery of Derrick Rogers ("the victim"). Defendant presented no evidence at trial, while the State's evidence relevant to the issues on appeal tended to show the following.
 

 Damon Bell testified that on 2 July 2013, defendant called him to buy a quarter pound of marijuana. With the marijuana in tow, Bell drove a white Cadillac to pick defendant up from his apartment, and the two proceeded to drive to a different apartment complex at defendant's instruction. Defendant told Bell where to park upon arriving at the complex, and the victim entered the back passenger side of the vehicle and sat behind defendant, who then handed the victim the marijuana.
 

 The victim examined the marijuana, said he liked its quality, requested a half pound instead of a quarter pound, and handed it back to defendant. According to Bell, defendant then pulled out a gun; said, "Look at my new rack"; and shot the victim once in the chest. Bell had never seen the gun before and said to defendant, "Excuse me? What the f*** was that?" Defendant responded by pointing the gun at Bell and instructing him to drive to another apartment complex.
 

 When they arrived at that complex, Bell stayed in the vehicle while defendant pulled the victim out of the back seat and onto the ground. Defendant then re-entered the vehicle and told Bell to drop him off at a nearby housing development. Bell testified that when defendant eventually exited the vehicle,
 
 *274
 
 he was holding the victim's chain necklace. Bell went home and did not call the police.
 

 In November 2013, Bell was arrested for accessory after the fact to first degree murder and given a secured bond. Two months later, his bond was changed to $275,000.00 unsecured. Bell testified that he did not consider the lack of a murder charge against him or being released on house arrest for the three years prior to defendant's trial to be a "deal" with the State. On direct examination, the prosecutor specifically
 
 *705
 
 asked Bell, "What if anything have you been offered in exchange for your testimony?," to which Bell responded, "Nothing." Defense counsel nevertheless pursued the issue on cross-examination:
 

 Q: Eventually there was a consent order to get [you] out of jail, wasn't there?
 

 A: Yep.
 

 ....
 

 Q: You walked right out the door, didn't you?
 

 A: Absolutely.
 

 Q: And that was part of your deal for testifying, wasn't it?
 

 A: I have no deal.
 

 Detective Mike Matthews of the Greensboro Police Department testified to interviewing Bell prior to his arrest for accessory after the fact. While Bell had initially denied knowing defendant or recognizing the victim, he ultimately gave Detective Matthews a version of events consistent with Bell's testimony at defendant's trial.
 

 On cross-examination by defense counsel, Detective Matthews testified to his understanding that Bell was not "eligible for the felony murder rule" and could not be arrested for first degree murder because Bell "did not know there was going to be somebody lose [sic] their life to do this narcotics transaction." Detective Matthews went on to state, "And I may be wrong, not a lawyer, but my knowledge of the felony murder rule would not include selling drugs." The issue was addressed again on redirect examination by the prosecutor:
 

 Q: Just briefly I want to talk about this felony murder. Isn't it usually a dangerous felony that has to have occurred like a robbery with a dangerous weapon?
 

 A: Yes, ma'am. There's a list of felonies. I don't exactly have the list memorized, but there's a list. Yes, ma'am.
 

 Q: In order to charge Mr. Bell with felony murder, wouldn't you have to have some evidence that he knew a robbery was going to take place?
 

 A: That would be correct.
 

 In her closing argument, the prosecutor generally addressed the law of first degree murder in North Carolina. She argued that the evidence
 
 *706
 
 at trial showed premeditation and deliberation on the part of defendant, which she described as "the first way to get to first degree murder[.]" The prosecutor continued by asserting that the second way
 

 is called the felony murder rule. There's been some discussion about that. If you engage in what's called an inherently dangerous felony, ... the law presumes it's foreseeable that someone could die during the commission of one of those felonies. So, if that happens, you're guilty of felony murder. And there's been some discussion about Mr. Bell's charges. .... I have signed an indictment. So if you don't like what Bell got charged with, it's on me. Doesn't excuse him, and it doesn't let him get away with murder. I would have to have some evidence that Bell knew the defendant had a gun in order to charge him with felony murder, and I don't have that.
 

 The prosecutor then returned her argument to defendant, stating to the jury that "if you believe, based on the evidence that the defendant wanted to rob [the victim], or did rob [the victim], and [the victim] got killed as a result of that robbery with the gun, then the defendant is guilty of felony murder."
 

 The jury returned verdicts finding defendant guilty of second degree murder and armed robbery. Defendant appeals.
 

 II. Discussion
 

 On appeal, defendant first contends his trial counsel was ineffective by failing to ensure the jury was informed that Bell could have been charged with first degree murder based on the felony murder rule, but was not.
 

 *275
 
 Defendant also argues that he was denied a fair trial when the prosecutor failed to correct incorrect testimony, actively elicited incorrect testimony, and recited the law incorrectly in her closing argument.
 

 As an initial matter, we note that defendant concedes he did not enter timely notice of appeal and has therefore petitioned this Court for a writ of certiorari. Because the infirmity is technical in nature, and because the State does not oppose the petition, we exercise our discretion to issue a writ of certiorari and address the merits of defendant's appeal.
 

 A. Ineffective Assistance of Counsel
 

 According to defendant, his trial counsel "was ineffective for failing to make sure the jury knew that Damon Bell could have been charged with first[ ]degree murder." He specifically contends that counsel "did
 
 *707
 
 not come to court armed with pertinent case law that could have been used to correct inaccuracies [about the felony murder rule] in Detective Matthews' testimony and the prosecutor's closing argument."
 

 i. Standard of review
 

 "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness."
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 561-62,
 
 324 S.E.2d 241
 
 , 248 (1985) (citation omitted). To meet this burden, the defendant must first show
 

 that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 

 Id.
 
 at 562,
 
 324 S.E.2d at 248
 
 (quoting
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 (1984) ). "The question becomes whether a reasonable probability exists that, absent counsel's deficient performance, the result of the proceeding would have been different."
 
 State v. Moorman
 
 ,
 
 320 N.C. 387
 
 , 398,
 
 358 S.E.2d 502
 
 , 510 (1987) (citing
 
 Strickland
 
 ,
 
 466 U.S. at 695
 
 ,
 
 104 S.Ct. at
 
 2068 ).
 

 ii. Analysis
 

 The only act or omission raised by defendant as evidence of ineffective assistance of counsel is his trial counsel's failure to ensure that the jury knew Bell could have been charged with first degree murder in the case, but was not. Defendant specifically identifies four instances in which counsel failed to correct inaccuracies about the felony murder rule in Detective Matthews's testimony as well as the prosecutor's closing argument, and he remains seemingly convinced that Bell's testimony was the result of a deal or immunity agreement with the State that the jury should have been informed about. We disagree.
 

 Prior to the testimony of a witness under a grant of immunity by the State, the trial court "
 
 must
 
 inform the jury of the grant of immunity and the order to testify[.]" N.C. Gen. Stat. § 15A-1052(c) (2017) (emphasis added). Additionally, "the judge
 
 must
 
 instruct the jury as in the case of interested witnesses" during the jury charge.
 

 Id.
 

 (emphasis added). In considering the mandate of N.C. Gen. Stat. § 15A-1052(c), our Supreme
 
 *708
 
 Court has noted that "[o]bviously, the legislature intended for the jury to know the witness was receiving something of value in exchange for his testimony which might bear on his credibility."
 
 State v. Hardy
 
 ,
 
 293 N.C. 105
 
 , 120,
 
 235 S.E.2d 828
 
 , 837 (1977).
 

 Additionally, even if the witness is not testifying under a grant of immunity, N.C. Gen. Stat. § 15A-1054 provides that
 

 (a) ... a prosecutor, when the interest of justice requires, may exercise his discretion not to try any suspect for offenses believed to have been committed ..., to agree to charge reductions, or to agree to recommend sentence concessions, upon the understanding or agreement that the suspect will provide truthful testimony in one or more criminal proceedings.
 

 ....
 

 *276
 
 (c) When a prosecutor enters into any arrangement authorized by this section, written notice fully disclosing the terms of the arrangement must be provided to defense counsel ... a reasonable time prior to any proceeding in which the person with whom the arrangement is made is expected to testify.
 

 N.C. Gen. Stat. § 15A-1054 (2017).
 

 Similar to the mandate of N.C. Gen. Stat. § 15A-1052(c), the prosecutor's obligation to disclose an arrangement made with a witness pursuant to N.C. Gen. Stat. § 15A-1054 does not depend upon a request by defense counsel.
 
 State v. Lowery
 
 ,
 
 318 N.C. 54
 
 , 62,
 
 347 S.E.2d 729
 
 , 735 (1986). However, the statute requires disclosure only when an arrangement has in fact been reached.
 
 State v. Howell
 
 ,
 
 59 N.C. App. 184
 
 , 187,
 
 296 S.E.2d 321
 
 , 322 (1982).
 

 In asserting that his trial counsel was ineffective, defendant essentially argues he suffered prejudice because the jury did not know Bell "was receiving something of value in exchange for his testimony which might bear on his credibility."
 
 Hardy
 
 ,
 
 293 N.C. at 120
 
 ,
 
 235 S.E.2d at 837
 
 . However, counsel repeatedly attempted to elicit that information on cross-examination of both Bell and Detective Matthews. Moreover, during the charge conference, counsel requested that the trial court instruct the jury on the testimony of a witness with immunity or quasi immunity. Counsel argued that because the State could have charged Bell with first degree murder, but instead charged him with the lesser
 
 *709
 
 offense of accessory after the fact, Bell had "received some sentencing concessions already."
 

 In response to defense counsel's argument, the prosecutor adamantly maintained that there had been no discussions with Bell or his attorney related to him testifying in exchange for immunity, a reduction in sentencing, or any other concession that might undermine Bell's credibility as a witness. The trial court agreed, noting "there's been no evidence of a grant of immunity or quasi immunity," and denied defense counsel's request for that instruction. The court went on to state that it would instruct the jury on the testimony of interested witnesses as well as accomplice testimony, which it believed would "cover the interest of Mr. Bell in this case."
 

 iii. Conclusion
 

 Although defendant's trial counsel attempted to elicit testimony regarding a deal between Bell and the State, and requested a jury instruction on the testimony of a witness with immunity, the record reveals that no such deal or immunity agreement existed. Moreover, had there been evidence of an immunity agreement between Bell and the State, the trial court would have been required by N.C. Gen. Stat. § 15A-1052(c) to inform the jury of that agreement. Similarly, had there been evidence of an alternative arrangement between Bell and the State, the prosecutor would have been required by N.C. Gen. Stat. § 15A-1054(c) to provide defense counsel with written notice fully disclosing the terms of that arrangement.
 

 On appeal, defendant does not contend that the trial court violated N.C. Gen. Stat. § 15A-1052(c) or that the prosecutor violated N.C. Gen. Stat. § 15A-1054(c), but argues instead that his trial counsel was ineffective by failing to correct inaccuracies about the felony murder rule such that the jury did not know Bell could have been charged with first degree murder. However, where there is no evidence that the witness received anything of value in exchange for his testimony at defendant's trial, we cannot conclude that defense counsel's performance-which included persistent attempts to elicit that information and have the court instruct the jury accordingly-amounted to ineffective assistance of counsel. This assignment of error is thus overruled.
 

 B. Due Process and Prosecutorial Misconduct
 

 In his second and final argument on appeal, defendant contends "the prosecutor allowed Detective Matthews to falsely testify on recross-examination that Bell could not have been charged with first[ ]degree
 
 *710
 
 murder; elicited similar testimony with leading questions on redirect examination of Matthews; and cemented the falsehood in the jurors' minds by stating it in her closing
 
 *277
 
 argument." According to defendant, the prosecutor's actions deprived him of a fair trial in violation of the Fourteenth Amendment to the United States Constitution as well as Article I, Section 19 of the North Carolina Constitution.
 

 Defendant concedes that he did not raise this constitutional argument before the trial court. "It is well-established that '[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal.' "
 
 State v. Moore
 
 ,
 
 185 N.C. App. 257
 
 , 265,
 
 648 S.E.2d 288
 
 , 294 (2007) (quoting
 
 State v. Lloyd
 
 ,
 
 354 N.C. 76
 
 , 86-87,
 
 552 S.E.2d 596
 
 , 607 (2001) ). Thus, defendant has failed to preserve this issue for appellate review.
 

 III. Conclusion
 

 Because defendant's trial counsel's alleged failure to ensure that the jury knew the State's key witness could have been charged with first degree murder did not amount to ineffective assistance of counsel, and because defendant has failed to preserve his constitutional argument for appellate review, we find no error occurring at the trial court.
 

 NO ERROR.
 

 Judges DILLON and DAVIS concur.