An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-758

Filed 20 August 2025

Wake County, Nos. 21CR202218-910, 21CR202220-910, 21CR202221-910, 21CR202222-910, 21CR202223-910, 21CR202224-910

STATE OF NORTH CAROLINA

v.

THOMAS CLAYTON JOHNSON and EMMALEI G. TREVATHAN, Defendants.

Appeal by defendants from judgments entered 14 June 2023 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 21 May 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Nicholaos Vlahos, for the State-appellee.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Daniel K. Shatz, for defendant-appellant Emmalei G. Trevathan.*

*Phoebe W. Dee for defendant-appellant Thomas Clayton Johnson.*

GORE, Judge.

Defendants Thomas Clayton Johnson and Emmalei G. Trevathan appeal from judgments entered upon jury verdicts finding them guilty of first-degree murder, murder of an unborn child, and concealment of a death. The trial court sentenced

each defendant to two consecutive terms of life imprisonment without parole. On appeal, both defendants primarily contend the trial court erred by joining their cases for trial and denying their motions to sever. They also challenge several evidentiary rulings, including the admission of prior bad acts and, in defendant Trevathan's case, impeachment by reference to pending charges in another state.

Jurisdiction lies in this Court pursuant to N.C.G.S. § 7A-27(b)(1), as defendants appeal from final judgments of the superior court in a criminal case. After careful review of the record, the parties' briefs, and applicable law, we conclude that the trial court did not err in denying the motions to sever, nor did it commit reversible error in any of the evidentiary rulings challenged on appeal. We therefore discern no error in the judgments entered against both defendants.

**I.**

On 22 February 2021, a Wake County grand jury returned true bills of indictment charging defendants with first-degree murder, murder of an unborn child, and concealment of a death. The charges arose from the death of Brittany Samone Smith, a pregnant woman who disappeared on 5 February 2021 and whose body was discovered several days later inside a purple suitcase submerged in the Neuse River.

On 5 June 2023, the State moved to join defendants for trial pursuant to N.C.G.S. § 15A-926(b)(2)(a). The trial court granted the motion over defendants' objections. Both defendants renewed their motions to sever at multiple points during trial, all of which the trial court denied.

At trial, the State presented evidence tending to show that defendants Johnson and Trevathan acted in concert to lure Smith into their van after contacting her through an escort website. Cell phone records, surveillance footage, and testimony established that defendants traveled with Smith to multiple locations, including the area near Milburnie Park, where Smith's body was later found. Law enforcement recovered a suitcase tied with orange and black rope containing Smith's body, and forensic analysis revealed she died from ligature strangulation. DNA evidence linked Johnson to Smith, and physical evidence connected both defendants to the suitcase and other items found in a motel room they had rented.

Defendant Trevathan testified in her own defense, stating that Johnson alone strangled Smith while Trevathan drove the van, and that she acted out of fear in helping to conceal the body. She described Johnson as controlling and threatening, and asserted she did not know he intended to harm Smith. Trevathan also acknowledged assisting in retrieving the suitcase used to dispose of the body and in purchasing new SIM cards to obscure their communications.

Defendant Johnson did not testify or present evidence. His defense strategy emphasized the State's burden of proof and highlighted inconsistencies in Trevathan's testimony.

The jury found both defendants guilty of all charges on 14 June 2023. The trial court consolidated the convictions for murder of an unborn child and concealment of a death into a single judgment and sentenced each defendant to two consecutive

terms of life imprisonment without parole. Both defendants gave notice of appeal in open court.

## II.

Defendants argue the trial court erred by granting the State's motion to join their cases for trial and by denying their repeated motions to sever. They contend the joinder resulted in prejudice due to antagonistic defenses and the introduction of evidence that, they claim, would not have been admissible in separate trials. We disagree.

**A.**

A trial court's ruling on a motion to join or sever is reviewed for abuse of discretion. *See State v. Lowery,* 318 N.C. 54, 59 (1986). A defendant seeking severance must show that joinder deprived them of a fair trial. N.C.G.S. § 15A-927(c)(2)(a) (2023); *State v. Evans*, 346 N.C. 221, 232 (1997).

**B.**

North Carolina law permits joinder of defendants when they are "charged with accountability for each offense." § 15A-926(b)(2)(a). Here, both defendants were charged with acting in concert to commit first-degree murder, murder of an unborn child, and concealment of a death. The State's theory at trial was that defendants jointly lured Smith into their van and participated in her killing and the subsequent disposal of her body.

Defendants contend that their defenses were mutually antagonistic—each

blaming the other for the killing—and that the joint trial unfairly prejudiced the jury. Although Trevathan testified that Johnson strangled Smith while she drove the van in fear, Johnson did not testify but, through counsel, blamed Trevathan during closing argument.

However, antagonistic defenses do not automatically require severance. *State v. Pendergrass*, 111 N.C. App. 310, 315 (1993). "The test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial." *Lowery*, 318 N.C. at 59.

No such showing was made here.

The State presented substantial independent evidence of each defendant's guilt. This evidence included: cell phone records and surveillance footage placing both defendants with Smith on the day of her disappearance; physical evidence connecting both defendants to the suitcase and the motel room where they stayed; Johnson's DNA found in a vaginal swab taken during autopsy; and Trevathan's own admissions regarding her participation in disposing of the body and in efforts to conceal communications with Smith.

The jury was also instructed that statements made by one defendant could not be used against the other unless properly admitted for that purpose. *See State v. Rasor*, 319 N.C. 577, 583 (1987) ("No prejudice results where the state presents plenary evidence of defendant's guilt, apart from the codefendant's testimony, and

where defendant has the opportunity to cross-examine the codefendant.").

Trevathan further asserts the trial court misapplied *State v. Pickens*, 335 N.C. 717 (1994), by focusing too heavily on the existence of "acting in concert" evidence rather than evaluating the potential prejudice from antagonistic defenses. *See Pickens*, 335 N.C. at 723–24. The record does not support this claim. The trial court considered the parties' arguments, the procedural posture, and the evidence presented. Its ruling on joinder was consistent with statutory requirements and controlling precedent.

In sum, while defendants presented conflicting theories, the record does not demonstrate that the joint trial deprived either of a fair determination of guilt. Given the volume and strength of the State's independent evidence, and the trial court's cautionary instructions, we conclude that the trial court did not abuse its discretion by denying the motions to sever.

## III.

Defendants next argue the trial court erred in admitting certain evidence of prior bad acts under Rule 404(b) of the North Carolina Rules of Evidence. Specifically, Johnson challenges the admission of messages referencing violent conduct and threats, while Trevathan challenges the admission of Facebook messages, statements regarding prior drug use, and references to a robbery charge in South Carolina. Both contend this evidence was irrelevant, unduly prejudicial, and admitted solely to show propensity. We disagree.

**A.**

We review the trial court's determination of whether evidence is admissible under Rule 404(b) de novo. *State v. Beckelheimer*, 366 N.C. 127, 130 (2012). If the evidence is deemed admissible under Rule 404(b), we then review the trial court's decision to admit the evidence under Rule 403 for abuse of discretion. *See State v. Coffey*, 326 N.C. 268, 278–79 (1990).

**B.**

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." § 8C-1, Rule 404(b) (2023). However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.*

The Facebook messages at issue here originated from a joint account maintained by Johnson and Trevathan. These messages included references to threats of violence, drug use, and coded language relating to robberies. Here, the evidence was offered for proper Rule 404(b) purposes and was relevant to the issues at trial.

The evidence was relevant to demonstrate the nature of the relationship between defendants and their shared criminal intent. The State introduced the messages to rebut Trevathan's testimony that she acted under duress and feared

Johnson. Evidence that Johnson and Trevathan had a close, coordinated partnership involving shared criminal activity—including setting up sex workers and taking money from them—directly undermined Trevathan's coercion defense and supported the State's theory that defendants acted in concert to kill Smith. These communications included language suggesting cooperation and closeness between defendants, which tended to support the State's theory of a shared plan or motive. *See State v. Stager*, 329 N.C. 278, 303 (1991) (noting that evidence of prior acts is admissible to show intent or common plan).

Similarly, the State's introduction of Trevathan's prior statements, including those related to drug use and criminal activity, were closely tied to her credibility and narrative of events. For example, Trevathan acknowledged on cross-examination that she had gone to jail for armed robbery, a fact she had previously disclosed in a text message. The jury was permitted to assess this information in light of her claim that she acted under coercion.

The trial court provided appropriate limiting instructions regarding the jury's consideration of this evidence. While defendants now argue the instructions were confusing or insufficient, neither defendant requested curative instructions nor objected to the ones given at trial. *See State v. Tirado*, 358 N.C. 551, 581 (2004) ("The law presumes that jurors follow the court's instructions.").

Finally, even assuming some of the Rule 404(b) evidence was erroneously admitted, defendants have not shown a reasonable probability that its exclusion

would have changed the outcome of the trial. *See* § 15A-1443(a) (2023); *State v. Wilkerson*, 363 N.C. 382, 420 (2009). The State presented overwhelming independent evidence of both defendants' involvement in the offense, including physical evidence, surveillance footage, and Trevathan's own testimony and admissions. Any error in the admission of prior bad acts was, therefore, harmless.

Accordingly, we conclude that the challenged evidence was properly admitted under Rule 404(b), and in any event, did not deprive either defendant of a fair trial.

**IV.**

Defendant Trevathan argues the trial court erred by permitting the State to question her about criminal charges pending in South Carolina during cross-examination. She contends this line of questioning violated well-established precedent barring impeachment with unadjudicated criminal conduct and that the trial court's subsequent limiting instruction was insufficient to cure the resulting prejudice. We conclude that defendant has failed to preserve this argument for appellate review and, alternatively, that no reversible error occurred.

**A.**

Whether a defendant was improperly impeached through reference to pending charges is reviewed de novo. *See State v. Williams*, 279 N.C. 663, 675 (1971). Evidentiary rulings regarding the scope of cross-examination are otherwise reviewed for abuse of discretion. *See State v. Houseright*, 220 N.C. App. 495, 500 (2012).

**B.**

At trial, Trevathan was asked on cross-examination about a text message in which she stated, "By the way, I went to jail for armed robbery." She responded by acknowledging the text and offering additional information indicating the incident involved pending charges in South Carolina.

Trevathan did not object, however, when the prosecutor questioned her about whether she and Johnson obtained money by taking it from sex workers. Nor did she object when the prosecutor elicited testimony indicating that she was aware Johnson was arranging to meet sex workers and robbing them, and that she did nothing to intervene. The first objection arose only after the prosecutor asked whether she had "got in trouble for the same thing in South Carolina[.]" Trevathan did not move to strike her own unresponsive statements concerning the out-of-state charges.

> For purposes of impeachment, a witness, including the defendant in a criminal case, may [n]ot be cross-examined as to whether he has been [a]ccused, either informally or by affidavit on which a warrant is issued, of a criminal offense unrelated to the case on trial, nor cross-examined as to whether he has been [a]rrested for such unrelated criminal offense.

*Williams*, 279 N.C. at 672. However, "[i]t is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct." *Id.* at 675.

A defendant may forfeit appellate review of such an error by failing to preserve the issue at trial. *See* N.C.R. App. P. 10(a)(1). That is the case here. "The failure to

move to strike the answer waives any objection to the information elicited when the inadmissibility of the testimony appears only in the response of the witness." *State v. Atkinson*, 309 N.C. 186, 189 (1983).

Even assuming error occurred, any prejudice was minimal. The State did not initiate questioning about the South Carolina charges; rather, the subject was opened by a message Trevathan had previously sent. Her own response introduced the pending status of the charges. Additionally, the trial court issued a limiting instruction directing the jury to consider the evidence only for purposes of credibility.

Finally, Trevathan has not shown a reasonable probability that, but for the admission of this evidence, the jury would have reached a different verdict. § 15A-1443(a). Considering the substantial independent evidence of her involvement—particularly her own testimony admitting to transporting the body, retrieving the suitcase, and concealing communications with the victim—we conclude that any error was harmless.

Accordingly, this argument is overruled.

## V.

For the foregoing reasons, we conclude that the trial court did not err in joining defendants for trial or in denying their motions to sever. The trial court also did not commit reversible error in admitting the challenged evidence under Rule 404(b), nor did it abuse its discretion in permitting the cross-examination of defendant Trevathan. To the extent any error arguably occurred, it was either not preserved or

was harmless in light of the overwhelming evidence of defendants' guilt. Defendants'

remaining arguments are likewise without merit.

Accordingly, we discern no error in the trial court's judgments.


NO ERROR.

Judges ZACHARY and FREEMAN concur.

Report per Rule 30(e).